

# In the Missouri Court of Appeals
# Eastern District
### DIVISION ONE

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | No. ED99883 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court |
| | ) | of the City of St. Louis |
| vs. | ) | |
| | ) | |
| AARON D. LUCY, | ) | Hon. Robin R. Vannoy |
| | ) | |
| Appellant. | ) | FILED: August 26, 2014 |

Aaron Lucy ("Defendant") appeals from the judgment of the trial court entered after a jury convicted him of murder in the first degree (Count 1), abuse of a child resulting in death (Count 3), two counts of armed criminal action (Counts 2 and 4), and tampering with physical evidence (Count 5). Finding no error, we affirm.

Viewed in the light most favorable to the judgment, the evidence is as follows. Defendant and A.N. ("Mother") had two children, an older daughter, A.L., and a son, K.L., who was born on April 29, 2008. Defendant and Mother had terminated their relationship by 2009. Mother had custody of the children during the week, and initially Defendant would visit them at his parents' home on the weekends, but in 2010 they began to visit him at his apartment in the City of St. Louis. On December 25, 2010, Mother drove the children to Defendant's apartment to open presents with Defendant and his parents, and she left them there. When Mother left Defendant's apartment K.L. had no injuries. Late that night, Defendant called his parents to pick up the children from his apartment, and they did. Defendant's parents dropped K.L. back at

Defendant's apartment on the morning of December 26, 2010, but took A.L. to a play. K.L. had no injuries when they left him with Defendant. Defendant's neighbor, Keenan Bassett, who lived across the hall, saw Defendant and K.L. that morning. K.L. was very excited and showed him some of his Christmas gifts. About an hour later Defendant borrowed some money from Bassett to buy cigarettes, taking K.L. with him. Bassett saw them when they came back, and K.L. was crying because his hands were cold. Bassett went to Defendant's apartment and gave K.L. some popcorn, which calmed him. Shortly thereafter Defendant went to Bassett's apartment and had Bassett come back to his apartment, where K.L. was crying. Defendant changed his diaper, and K.L. stopped crying. K.L was uninjured at that time. Bassett returned home. Several hours later, around 7:00 p.m., Bassett was dozing on his couch and kept hearing the main door of the apartment building slam. Defendant knocked on the door of Bassett's apartment, and asked him to call his cell phone, which he could not find. Bassett noticed that Defendant had blood on his hand at the time, smearing a bit on his door, and assumed it was from slamming his hand in the door. When asked by Bassett, Defendant told him that K.L. was sleeping. Defendant was fully dressed at that time.

Approximately an hour later, about 8:00 p.m., Defendant was again knocking at Bassett's door in a hysterical state, telling him to call the police and an ambulance. Defendant was naked when Bassett opened the door. Defendant went back to his apartment and Bassett followed. He saw K.L. naked on the floor with Defendant apparently trying to perform CPR. Bassett saw that K.L.'s body was red all over, like it was bruised, with blood on the carpet and around his body. He went back to his home and called 911.

Personnel from the St. Louis City Fire Department ("Fire Department") arrived first, followed by police. Charles Poehl, an EMT with the Fire Department was one of the first

responders. He observed Defendant outside of the apartment building, naked and wrapped in a blanket, gesturing to the emergency personnel to come inside. Poehl went into Defendant's apartment and saw K.L. on the floor in the middle of the apartment with paramedics working on him. Defendant sat on the floor a few feet away, with blood smeared on many spots of his body. There was broken furniture and debris all around K.L., and the entire apartment was in disarray. Poehl heard Defendant ask several times if it was okay to take a shower. Despite being told not to do so, Defendant got up, went down the hall into the bathroom and proceeded to shower off the blood off of his body.

K.L. was transferred to the hospital, where he subsequently died. His injuries were extensive, with multiple skull fractures, including a comminuted skull fracture, a fractured collarbone, and a lacerated liver. The autopsy showed scratches and bruises all over K.L.s body, with differing patterns indicating that multiple different surfaces came into contact with the body to cause the injuries. There was blunt force trauma to K.L.'s scrotum. In addition to the skull fratures, K.L.'s head had scrapes, bruises, and a puncture wound. The medical examiner concluded that K.L. was not stationary when the injuries occurred based on the varying locations of the injuries. K.L. also suffered brain trauma, and it was the injuries to his brain that killed him.

The police observed and documented evidence in Defendant's apartment. There were blood stains on the front door, a picture frame, a toy, a doorjamb, and the bathroom floor. K.L.'s blood was identified in multiple places: the living room floor, the hallway wall, a hallway doorframe, the hallway floor, a dresser drawer, which was broken, on the bottom of a can, and on a coat, a towel, and black sweatpants and a black t-shirt that were soaking wet.

3

Defendant was charged by substitute information with murder in the first degree, abuse of a child causing death, two counts of armed criminal action, and tampering with physical evidence. The State presented a number of witnesses and numerous exhibits. The jury convicted Defendant on all five counts. The trial court sentenced Defendant as a prior felony offender to the following terms of imprisonment: life without the possibility of parole on Count I; life on Counts 2, 3, and 4, and a term of four years, with the sentences on all counts to run concurrently. Defendant now appeals from this judgment.

In his first point relied on Defendant contends that the trial court erred in denying his motion to dismiss Counts 3 and 4 and for sentencing him for both murder in the first degree and abuse of a child resulting in death because this constituted double jeopardy. Defendant argues that both charges involve the same elements and the act for which he was convicted was a continuous course of conduct.

The federal double jeopardy clause states that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." U.S. CONST. amend. V. It gives criminal defendants two basic protections: it protects them from successive prosecutions for the same offense after acquittal or conviction and it protects them from multiple punishments for the same offense. State v. Hardin, 429 S.W.3d 417, 421 (Mo. banc 2014) (citing Brown v. Ohio, 432 U.S. 161, 165, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977)).

Defendant's case raises this second protection because he was convicted of first degree murder and child abuse resulting in death at a single trial. Regarding cumulative sentences imposed in a single trial, the Double Jeopardy Clause does nothing more than prevent the sentencing court from prescribing greater punishment than the legislature intended. Id. (quoting Missouri v. Hunter, 459 U.S. 359, 366, 103 S.Ct. 673, 74 L.Ed.2d 535 (1983)). Accordingly, our

Double Jeopardy analysis concerning multiple punishments is limited to determining whether the legislature intended cumulative punishments. Id. (quoting State v. McTush, 827 S.W.2d 184, 186 (Mo. banc 1992)).

The statutes defining first degree murder and abuse of a child resulting in death, sections 565.020 and 568.060 RSMo 2000 respectively, are silent as to whether the legislature intended cumulative punishments for these offenses. In this situation the legislature's general intent is set forth in section 556.041, and it reflects the intent to impose cumulative punishments unless the offenses at issue fall into one of the statutory exceptions. Id. at 422. It provides that:

> When the same conduct of a person may establish the commission of more than one offense he may be prosecuted for each such offense. He may not, however, be convicted of more than one offense if
>     (1) One offense is included in the other, as defined in section 556.046; or
>     (2) Inconsistent findings of fact are required to establish the commission of the offenses; or
>     (3) The offenses differ only in that one is defined to prohibit a designated kind of conduct generally and the other to prohibit a specific instance of such conduct; or
>     (4) The offense is defined as a continuing course of conduct and the person's course of conduct was uninterrupted, unless the law provides that specific periods of such conduct constitute separate offenses.

Defendant contends that the situation in this case falls into the exception set forth in sections 556.041(1). He avers, in essence, that child abuse resulting in death under section 568.060.3(2) is included in first degree murder under section 565.020. Section 556.046.1(1) defines an included-offense. Id. It provides that an offense is included when "[i]t is established by proof of the same or less than all the facts required to establish the commission of the offense charged[.]" Under this common elements test, the elements of the offenses at issue are garnered from the statutes and compared. Id. Analysis under section 556.046.1(1) focuses on the statutory elements of the offenses at issue rather than upon the evidence offered at trial. State v. Horton, 325 S.W.3d 474, 479 (Mo. App. 2010) (citing McTush, 827 S.W.2d at 188)). The

elements of the two offenses are compared in the abstract, with no regard to specific conduct alleged. State v. Derenzy, 89 S.W.3d 472, 474 (Mo. Banc 2002). "'If each offense requires proof of a fact that the other does not, then the offenses are not lesser included offenses, notwithstanding a substantial overlap in the proof offered to establish the crimes.'" Hardin, 429 S.W.3d at 422 (quoting McTush, 827 S.W.2d at 188). See also State v. Gray, 347, S.W.3d 490, 507 (Mo. App. 2011). In other words, a particular crime "'is a lesser included offense if it is impossible to commit the greater without necessarily committing the lesser.'" Id. (quoting Derzenzy, 89 S.W.3d at 474).

The elements of first-degree murder are: "A person commits the crime of murder in the first degree if he [1] knowingly [2] causes the death of another person [3] after deliberation upon the matter." Section 565.020 RSMo 2000[1]; State v. O'Brien, 857 S.W.2d 212, 217 (Mo. Banc 1993). Child abuse resulting in death under section 568.060 provides that:

1. A person commits the crime of abuse of a child if such person:

(1) knowingly inflicts cruel and inhuman punishment upon a child less than seventeen years old …

3. Abuse of a child is a class C felony, unless: …

(2) A child dies as a result of injuries sustained from conduct chargeable pursuant to the provisions of this section, in which case the crime is a class A felony.

First degree murder requires that a defendant act with deliberation. Abuse of a child resulting in death requires that a defendant inflicted cruel and inhuman punishment on a child less than seventeen years old. Each offense requires proof of a fact that the other does not. Accordingly, these are not included offenses under section 556.041(1) or the Double Jeopardy Clause. See Gray, 347 S.W.2d at 507 (holding that a defendant's convictions for conventional second degree

---

[1] Unless noted otherwise all further statutory citations are to RSMo 2000.

murder and abuse of a child resulting in death did not run afoul of section 556.041(10) or the Double Jeopardy Clause because each statute has an element that the other does not).[2]

Defendant also argues that his convictions and sentence cannot stand because section 556.041(4) prohibits convictions for offenses that constitute a continuing course of conduct. He asserts that his multiples blows to K.L. that he concedes, at a minimum, lasted for "minutes" were part of a continuous course of conduct that only killed K.L. once, and cites to the dictionary definition of "continuous" for support.

The problem with Defendant's reliance on the dictionary definition of "continuous" is that section 556.041(4) provides that a defendant may not be convicted of more than one offense if: "[t]he offense is defined as a continuing course of conduct and the person's course of conduct was uninterrupted, unless the law provides that specific periods of such conduct constitute separate offenses." The issue is the whether or not the offense is defined as a continuing course of conduct. Neither first degree murder nor abuse of a child is defined as a continuing course of conduct, and Defendant cites to no authority that would indicate that either offense is so defined. In contrast, this Court has held that conventional second degree murder and abuse of a child resulting in death are not continuing courses of conduct, stating "[t]he act of striking someone is distinguishable from those offenses that intrinsically involve a continuing course of conduct such as false imprisonment, bigamy, and operating a house of prostitution." Id. Point denied.

In his second point relied on Defendant asserts that the trial court erred in overruling his motions for judgment of acquittal, in entering judgments of conviction, and in sentencing him for first degree murder and armed criminal action in violation of his rights to due process and a fair trial because there was insufficient evidence to support a finding of guilt beyond a reasonable

---

[2] If conventional second degree murder and abuse of a child resulting in death are not included offenses, which this Court held in Gray, it is impossible that first degree murder, which requires the added element of deliberation, and abuse of a child resulting in death could be included offenses.

7

doubt. He argues that the evidence did not establish beyond a reasonable doubt that he caused K.L.'s death after deliberation upon the matter.

In reviewing a sufficiency of the evidence claim, this Court determines whether sufficient evidence allows a reasonable trier of fact to find guilt. State v. Ecford, 239 S.W.3d 125, 127 (Mo. App. 2007). This Court views the evidence and the inferences therefrom in the light most favorable to the verdict, disregarding all evidence and inferences to the contrary. Id. It is the responsibility of the finder of fact, not the appellate court, to determine the weight and credibility of all witnesses, including experts. State v. Hayes, 88 S.W.3d 47, 58-59 (Mo. App. 2002). The finder of fact may choose to believe or reject all, some, or none of the testimony of any witness. Id. at 58. The State has the burden of proving each and every element of the charged offense beyond a reasonable doubt. Ecford, 239 S.W.3d at 127. There cannot be a conviction "'except upon evidence that is sufficient to support a conclusion that every element of the crime has been established beyond a reasonable doubt.'" Woolford v. State, 58 S.W.3d 87, 89 (Mo. App. 2001) (quoting Jackson v. Virginia, 443 U.S. 307, 314-15, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)).

"A person commits the crime of murder in the first degree if he knowingly causes the death of another person after deliberation upon the matter." Section 565.020.1. "'Deliberation' means cool reflection for any length of time no matter how brief." Section 565.002(3). Proof of deliberation typically must be provided through the circumstances surrounding the crime. State v. Strong, 142 S.W.3d 702, 717 (Mo. Banc 2004). "Deliberation may be inferred, but it must still be proved beyond a reasonable doubt." Id. "'Proof of deliberation does not require proof that the defendant contemplated his actions over a long period of time, only that the killer had ample opportunity to terminate the attack once it began.'" Id. (quoting State v. Johnston. 957 S.w.2d 734, 747 (Mo. banc 1997). "Deliberation need be only momentary." State v. Atwood,

8

294 S.W.3d 144, 145 (Mo. App. 2009). "Deliberation may be inferred when there are multiple wounds or blows." Strong, 142 S.W.3d at 717.

The evidence and the reasonable inferences therefrom demonstrate that sufficient evidence existed for the jurors to find that Defendant deliberated. Although Defendant argues that his attacks may have lasted "mere minutes" there was also evidence that the attacks on K.L. could have lasted an hour or more. Bassett testified that at approximately 7:00 p.m. Defendant knocked on his door and had blood on his hand. It was approximately 8:00 p.m. when Defendant returned to Bassett's apartment to seek help, with blood all over his body. After Defendant showered the blood off of his body, there was no evidence of any cut on his hands. In addition, Missouri courts have repeatedly held that "[d]eliberation may be inferred when there are multiple wounds or repeated blows." Id.; Johnston, 957 S.W.2d at 748; State v. Smith, 185 S.W.3d 747, 759 (Mo. App. 2006); State v. Stacy, 913 S.W.2d 384, 386 (Mo. App. 1996). There was testimony the injuries to K.L. covered all of the major surfaces of his body save for the palms of his hands and the soles of his feet. K.L. had multiple fractures, including two to his head, the severity of which led to his death. He had a lacerated liver, evidence of blunt force trauma to his scrotum, and scratches and bruises all over his body, with marks of different patterns. K.L.'s blood was found throughout the Defendant's apartment, and the medical examiner concluded that K.L. was not stationary when these injuries were inflicted. There was ample evidence for reasonable jurors to reasonably infer that Defendant acted with deliberation. The evidence was sufficient to sustain Defendant's conviction for first-degree murder. Point denied.

In his third point relied on Defendant avers that the trial court erred in overruling his motions for judgment of acquittal, in entering judgments of conviction, and in sentencing him for tampering with physical evidence because the State's evidence was insufficient to support a

9

finding of guilt beyond a reasonable doubt for tampering with physical evidence in that the State presented no evidence that the investigation of K.L.'s murder "was in the least bit impaired by [his] conduct."

As previously stated, in reviewing a sufficiency of the evidence claim, we determine whether sufficient evidence allows a reasonable trier of fact to find guilt, viewing the evidence and the reasonable inferences therefrom in the light most favorable to the verdict and disregarding all evidence and inferences to the contrary. Ecford, 239 S.W.3d at 127. The State has the burden of proving each and every element of the charged offense beyond a reasonable doubt. Id. There cannot be a conviction "'except upon evidence that is sufficient to support a conclusion that every element of the crime has been established beyond a reasonable doubt.'" Woolford, 58 S.W.3d at 89.

Under section 575.100, "[a] person commits the crime of tampering with physical evidence if he: (1) [a]lters, destroys, suppresses or conceals any record, document or thing with purpose to impair its verity, legibility or availability in any official proceeding or investigation; …." There is no requirement, contrary to Defendant's assertion, that the investigation actually be impaired; rather, it is sufficient if a person has the purpose of impairing an investigation. There was testimony that while the paramedics were trying to save K.L., Defendant was sitting on the floor, naked save for a blanket, smeared with blood "in many locations" and that he told the paramedics that he was going to take a shower, and was told not to do so. Despite the instruction not to take a shower, Defendant got up, walked down the hallway to the bathroom followed by Poehl, the fire department EMT, went into the bathroom and took a shower, during which he "cleaned himself thoroughly[,]" washing K.L.'s blood off of his body. Given the surrounding circumstances, particularly after being told not to take a shower, it is a reasonable

10

inference that he washed K.L.'s blood off of his body, thereby destroying, suppressing or concealing it, with the purpose of impairing the investigation into his abuse and murder of K.L. It is irrelevant that it did not actually impair the investigation to any noticeable degree. Point denied.

In his fourth point relied on Defendant asserts that the trial court plainly erred by abusing its discretion in submitting Instructions 6 and 13 for armed criminal action because he was not assured a unanimous jury verdict in that the submitted instructions did not differentiate between multiple, separate means of committing armed criminal action, did not ensure that the jury would unanimously convict him of the same conduct, and were outcome determinative.

"Plain errors affecting substantial rights may be considered in the discretion of the court when the court finds that manifest injustice or miscarriage of justice has resulted." Rule 30.20. Plain errors are those that are evident, obvious and clear. State v. Williams, 306 S.W.3d 183, 185 (Mo.App.2010). Plain error review is to be used sparingly, and an appellate court has total discretion whether or not to review an unpreserved matter for possible plain error.

Plain error review is a two-step process. State v. Whitaker, 405 S.W>3d 554, 558 (Mo. App. 2013). We first determine whether plain error has occurred, namely whether the claim for review demonstrates on its face substantial grounds for believing that a manifest injustice of a miscarriage of justice has resulted. Id. If we find plain error on the face of the claim for review, this Court has discretion to proceed to the second step of the process: the determination of whether the asserted error actually resulted in a manifest injustice or miscarriage of justice. Id. Manifest injustice depends on the particular facts and circumstances of each. Id. Plain error can be the basis for granting a new trial only if the error was outcome-determinative. Id. It is the

11

defendant's burden to establish that plain error occurred that resulted in manifest injustice or a miscarriage of justice. Id.

Instructional error rarely rises to the level of plain error. Drisdel, 417 S.W.3d at 786. A reversal is required only when it is readily apparent that purported instructional error affected the jury's verdict. Id.

Defendant relies exclusively on State v. Celis-Garcia, 344 S.W.3d 150 (Mo. banc 2011) to argue that the jury verdict on the armed criminal action counts were not unanimous, but the case is inapposite. Celis-Garcia involved a defendant charged with committing multiple criminal acts, similar in nature, against the same victim, but the verdict directors failed to distinguish clearly between the various acts charged. Id. at 156. As Defendant admits in his brief, he was charged with one act giving rise to four counts, not with multiple criminal acts where the verdict directors failed to distinguish clearly between the various acts charged.

Defendant argues that the verdict-directors did not require the jury to agree on which "dangerous instrument" was used to cause K.L.'s death and that accordingly the members of the jury could pick and choose "among several different possibilities" without concurring. The State does not have to prove what "dangerous instrument" was used, but rather only that a dangerous instrument was used, and this can be proved through circumstantial evidence. See State v. Folson, 197 S.W.3d 658, 662-63 (Mo. App. 2006); State v. Daniels, 18 S.W.3d 66, 68-69 (Mo. App. 2000). The "dangerous instrument" does not need to specifically identified or produced. Id. The trial court did not plainly err in submitting Instructions 6 and 13. Point denied.

The judgment of the trial court is affirmed.

CLIFFORD H. AHRENS, Judge

Lawrence E. Mooney, P.J., and Glenn A. Norton, JJ., concur.

12