

# In the Missouri Court of Appeals
## Eastern District

### DIVISION TWO

| | | |
|---|---|---|
| GARVESTER BRACKEN, | ) | No. ED101059 |
| | ) | |
| Movant/Appellant, | ) | Appeal from the City of St. Louis |
| | ) | Circuit Court |
| vs. | ) | |
| | ) | Honorable Bryan L. Hettenbach |
| STATE OF MISSOURI, | ) | |
| | ) | Filed: February 3, 2015 |
| Respondent. | ) | |

### Introduction

Garvester Bracken (Movant) appeals the denial of his Rule 29.15 motion for post-conviction relief without an evidentiary hearing following his convictions for attempted deviate sexual assault, forcible rape, and two counts of second-degree domestic assault. Movant claims the motion court clearly erred in denying his motion for post-conviction relief because his trial counsel was ineffective for: (1) failing to object to cross-examination testimony that Movant was abusive towards his former spouse; and (2) failing to challenge his domestic assault convictions on the basis of double jeopardy. We affirm.

### Factual Background

Movant was indicted on sixteen charges: six counts of forcible rape, three counts of attempted deviate sexual assault, one count of deviate sexual assault, three counts of third-degree

domestic assault, two counts of second-degree domestic assault, and one count of unlawful use of a weapon. The charges stemmed from Movant's wife's (Victim) allegations that he repeatedly committed acts of sexual assault and rape against her during the last week of March 2008. Following a trial in 2009, Movant was convicted on one count of forcible rape and one count of attempted deviate sexual assault, but the jury could not reach a decision on the remaining fourteen counts.[1] The matter was retried in 2011. At the close of the second trial, the jury convicted Movant of attempted deviate sexual assault (Count X), forcible rape (Count XI), and two counts of second-degree domestic assault (Counts XII and XIII). The trial court sentenced him to two years' imprisonment on Count X, seventeen years' imprisonment on Count XI, and six years each on Counts XII and XIII. Counts XII and XIII were to run concurrently with each other, but consecutively to Counts X and XI, for a total of twenty-three years' imprisonment. Following an appeal, this Court affirmed his convictions in *State v. Bracken*, 382 S.W.3d 206 (Mo. App. E.D. 2012).

Movant subsequently filed a *pro se* Rule 29.15 motion for post-conviction relief. Appointed counsel filed an amended motion alleging ineffective assistance of counsel. In January 2014, the motion court entered its judgment denying post-conviction relief without an evidentiary hearing, finding that Movant failed to allege facts unrefuted by the record that would entitle him to relief. Movant appeals.

### Standard of Review

Appellate review of the denial of a Rule 29.15 motion is limited to a determination of whether the motion court's findings of fact and conclusions of law are clearly erroneous. *Zink v. State*, 278 S.W.3d 170, 175 (Mo. banc 2009). The motion court's judgment is clearly erroneous

---

[1] This Court affirmed Movant's convictions from his first trial in *State v. Bracken*, 333 S.W.3d 48 (Mo. App. E.D. 2010).

only if, after a review of the record, we are left with the definite and firm impression that a mistake has been made. *Worthington v. State*, 166 S.W.3d 566, 572 (Mo. banc 2005). The motion court's findings are presumed correct. *Id.*

To establish ineffective assistance of counsel, the movant must prove by a preponderance of the evidence that: (1) counsel failed to exercise the level of skill and diligence of a reasonably competent attorney; and (2) that he was thereby prejudiced. *Zink*, 278 S.W.3d at 175 (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). To satisfy the prejudice prong under *Strickland*, the movant must show that absent the alleged errors, there is a reasonable probability that the outcome would have been different. *Zink*, 278 S.W.3d at 176.

An evidentiary hearing is not required unless: (1) the motion alleges facts, not conclusions, warranting relief; (2) the facts alleged are not refuted by the files and records in the case; and (3) the matters complained of resulted in prejudice. *McKee v. State*, 336 S.W.3d 151, 153 (Mo. App. E.D. 2011).

**Discussion**

*Point I: Failure to Object to Cross-Examination Testimony*

In his first point, Movant contends that the motion court clearly erred in denying his post-conviction motion without an evidentiary hearing because his trial counsel was ineffective for failing to object to cross-examination testimony by Movant's former spouse, "S.H.," that Movant was abusive towards her during their marriage. Movant also claims that trial counsel should have requested a mistrial because the testimony was irrelevant and constituted improper propensity evidence of his prior bad acts.

In response, the State contends that the motion court did not clearly err in denying this claim because Movant failed to overcome the presumption that counsel's failure to object to the

3

cross-examination testimony was a matter of trial strategy and because Movant failed to demonstrate that the outcome would have been different even if counsel had objected and requested a mistrial. The State also asserts that Movant is in no position to complain because defense counsel utilized the challenged testimony to his advantage during closing argument to bolster S.H.'s credibility as an alibi witness.

"Decisions about whether or when to make objections at trial are left to the judgment of counsel." *State v. Helmig*, 42 S.W.3d 658, 678, (Mo. App. E.D. 2001). Ineffectiveness is rarely found in cases where trial counsel has failed to object. *Johnson v. State*, 330 S.W.3d 132, 139 (Mo. App. W.D. 2010). "The mere failure to object to objectionable evidence or argument does not establish ineffective assistance of counsel." *Williams v. State*, 783 S.W.2d 457, 458 (Mo. App. E.D. 1990). "In many instances seasoned trial counsel do not object to otherwise improper questions or arguments for strategic purposes." *State v. Tokar*, 918 S.W.2d 753, 768 (Mo. banc 1996). In particular, "[i]t is feared that frequent objections irritate the jury and highlight the statements complained of, resulting in more harm than good." *Id*.

Movant must overcome the presumption that trial counsel made all significant decisions in the exercise of his reasonable professional judgment and that any challenged action was a matter of sound trial strategy. *Williams v. State*, 168 S.W.3d 433, 439 (Mo. banc 2005). In addition to proving that counsel's failure to object was not reasonable trial strategy, the movant must show that the alleged error was prejudicial. *State v. Clay*, 975 S.W.2d 121, 135 (Mo. banc 1998). To justify relief, the movant must show that he suffered a substantial deprivation of the right to a fair trial. *Id*. Moreover, where the failure to object results in trial error not rising to constitutional proportions, the claim is not cognizable in a post-conviction proceeding. *See Helmig*, 42 S.W.3d at 678. Post-conviction counsel cannot convert unpreserved error into viable

4

error merely by arguing incompetence. *See Jones v. State*, 784 S.W.2d 789, 793 (Mo. banc 1990).

Here, the record shows that defense counsel called S.H. as an alibi witness to establish that Movant was in Ohio at the time of the alleged offenses. On direct examination, S.H. testified that she and Movant were married for eighteen years, but that she left him after ten years and moved to Ohio with the couple's three children. S.H. said that Movant arrived in Ohio on March 4, 2008 to have his car repaired and stayed until March 31, 2008. S.H. also testified that she and Movant were now friends and that while he was staying at her house in Ohio in March 2008, he had "friendly visits" with their children and the family got together every night.

During cross-examination, S.H. testified that after moving to Ohio, she did not "really have anything to do with [Movant]." However, when asked about her previous testimony indicating that she and Movant "barely spoke" when he stayed at her home in March 2008, S.H. said that she did not "remember that far back." The prosecutor also questioned S.H. about which date she recalled that Movant had arrived in Ohio to get his car repaired. Although admitting that she had previously stated that she was not sure which day Movant arrived in Ohio, S.H. testified that after having "enough time to think about it," she was sure that he arrived on March 4, 2008. She also testified that after Movant's car was repaired and ready to drive, she took him to pick it up on March 26, 2008. S.H. recalled that Movant left Ohio "sometime after he got his car fixed, but before his birthday on April 7." When asked whether Movant was abusive during their marriage, S.H. said that he was but also indicated that she had since forgiven him.

In denying post-conviction relief, the motion court found that Movant's claim was without merit, noting that trial counsel is presumed to have made all significant decisions in the exercise of counsel's reasonable professional judgment and that any challenged action is

5

presumed to be part of sound trial strategy. *See William*s, 168 S.W.3d at 439. The motion court also pointed to the following remarks made by defense counsel during closing argument:

> March 29th, why do we know [Movant] is not here? Well, [S.H.] came all the way from Dayton, Ohio to tell you that. Repeat, [S.H.] came in and said [Movant] was at my house from March 4th to March 31st. I saw him leave on March 31st. And why do you know she was telling the truth? Because she gave you an admission. When [the prosecutor] asked her have you ever been abused by Movant, she admitted it. She admitted it. That's why you know she was telling the truth.

In noting defense counsel's references to S.H.'s admission during closing argument, the motion court found that the testimony was likely to have been more beneficial than prejudicial. Movant asserts that even if counsel's failure to object was trial strategy, the court should have given him an opportunity to present evidence to show that counsel's strategy was "unreasonable." We disagree.

"The choice of trial strategy is not a foundation for finding ineffective assistance of counsel." *See State v. Vinson*, 833 S.W.2d 399, 409 (Mo. App. E.D. 1992). Counsel will not be deemed ineffective for reasonable choices of trial strategy no matter how ill-fated they may appear in hindsight. *See Worthington*, 166 S.W.3d at 572. Although Movant now complains that he was deprived of his right to a fair trial due to counsel's failure to object to S.H.'s testimony, it is evident from the record that the defense utilized S.H.'s testimony to Movant's advantage to bolster S.H.'s credibility as an alibi witness so that the jury would believe her testimony that Movant was staying at her home in Ohio during the period of time that the alleged crimes occurred. Movant cannot have it both ways, that is, he cannot complain on appeal about evidence that he not only failed to object to, but *highlighted in closing argument* to underscore the credibility of his witness and to further his own case. *See Kline v. City of Kansas* City, 334

S.W.3d 632, 641-42 (Mo. App. W.D. 2011) (emphasis in original); *see also State v. Finster*, 985 S.W.2d 881, 888 (Mo. App. S.D. 1999).

Overall, the State's cross-examination of S.H. was primarily focused on efforts to impeach her credibility by establishing the inconsistency of her testimony with regard to her recollection of the dates that Movant was in Ohio. In addition, some of the testimony elicited by defense counsel during direct examination was an apparent attempt to present Movant as a "family man" who had remained on good terms with his former spouse and their children. This arguably opened the door, at least to some extent, for the State to elicit testimony to refute this portrayal.

Moreover, the State did not argue that Movant was guilty of the charged offenses based on S.H.'s admission. Rather, the State presented credible testimony by Victim who recalled repeated incidents of abuse inflicted by Movant during the last week in March 2008. The State also called several other witnesses, including a co-worker of Victim's who recalled seeing bruises on Victim from "the collarbone up to the top of her neck" and noticed that Victim was "visibly upset" when she returned to work after the assaults. Victim's daughter testified that when her mother came to stay with her on April 1, 2008, she was visibly shaken, withdrawn, nervous, and afraid. Daughter also said that she noticed bruises on her mother. In addition, a sergeant with the domestic violence unit of the police department, who was called as a defense witness, testified on cross-examination that during an interview with Victim several days after the assaults, she was visibly shaken and crying throughout much of the interview. The officer also testified that Victim reported that Movant had repeatedly assaulted her, including raping and strangling her. The officer also observed bruises on Victim. After interviewing Victim, he

notified other law enforcement agencies that Movant was wanted for questioning in connection with the alleged incidents.

Even assuming *arguendo*, that counsel should have objected to S.H.'s testimony, the failure to object does not rise to the level of ineffective assistance of counsel unless Movant "has suffered a substantial deprivation of the right to a fair trial." *See State v. Lay*, 896 S.W.2d 693, 702 (Mo. App. W.D. 1995) (citation and quotations omitted). "The ultimate test is whether the efforts and representation of the attorney have reached a level of adequacy so that the defendant has had a fair trial." *Id.*

Here, the record reflects that Movant had two attorneys representing him throughout the trial who filed pre-trial and post-trial motions, called defense witnesses, presented alibi evidence, cross-examined the State's witnesses, objected to evidence, and made arguments to the jury. The record does not show that counsel was incompetent or that Movant was deprived of a fair trial.

Movant's assertion that defense counsel was ineffective for failing to request a mistrial is also without merit. "Mistrial is a drastic remedy only to be exercised in extraordinary circumstances where there is no other way to remove the prejudice to the defendant." *Jones v. State*, 389 S.W.3d 253, 259 (Mo. App. E.D. 2012). A movant must show that there is a reasonable probability that he was deprived of a fair trial. *State v. Clemons*, 946 S.W.2d 206, 231 (Mo. banc 1997). To show prejudice, the movant must demonstrate that a mistrial would have been granted by the court had it been requested. *Id.*

The record shows that the motion court judge who presided over Movant's post-conviction proceeding also presided at his criminal trial. After reviewing Movant's motion for post-conviction relief, the court found that Movant was not prejudiced because counsel's failure to request a mistrial did not violate his right to a fair trial and a mistrial would not have been

8

granted even if counsel had requested it. Counsel will not be deemed ineffective for failing to request a mistrial that would not have been granted. *See, e.g., State v. Tivis*, 933 S.W.2d 843, 849 (Mo. App. W.D. 1996). Because the record conclusively refutes Movant's claim that the outcome would have been different had counsel objected and requested a mistrial, the motion court did not clearly err in denying this claim without an evidentiary hearing. Point I is denied.

### Point II: Double Jeopardy

In his second point, Movant contends that the motion court clearly erred in denying his post-conviction motion without an evidentiary hearing based on his claim that his attorneys were ineffective for failing to challenge his convictions and sentences for two counts of second-degree domestic assault on the basis of double jeopardy. Specifically, Movant claims that he could not be convicted of committing two domestic assault offenses because both counts arose from the same set of facts and were not separate crimes. Movant maintains that he was prejudiced because if counsel had challenged his domestic assault convictions, there was a reasonable probability that one of the counts would have been discharged and he would only have been "convicted of a single count."

In response, the State asserts that Movant's double jeopardy claim was properly denied because he could and should have raised it before the trial court and/or on direct appeal but failed to do so, and consequently, this claim is not cognizable in a post-conviction proceeding. The State also maintains that trial counsel was not ineffective for failing to challenge the domestic assault convictions because the offenses were based on two separate acts of choking.

"A post-conviction motion does not substitute for a direct appeal." *State v. Tolliver*, 839 S.W.2d 296, 298 (Mo. banc 1992) Rule 29.15 cannot be used to obtain post-conviction relief of matters that were or should have been raised on direct appeal. *Id*. Issues that should have been

9

raised on direct appeal–even constitutional claims–may not be raised in a post-conviction motion, except where fundamental fairness requires otherwise and only in "rare and exceptional circumstances." *Id*. "A claim of double jeopardy is not cognizable in a post-conviction proceeding where it could have been raised on direct appeal." *Id*.

Here, the record reveals no rare and exceptional circumstances that would justify such a review. Movant did not object to the verdict directors on Counts XII and XIII at trial, nor did he raise the issue on direct appeal, though he could have done so. Since he did not raise the issue on direct appeal, he is precluded from raising this claim in a post-conviction action. *See Henderson v. State*, 786 S.W.2d 194, 197 (Mo. App. E.D. 1990)

Even if the issue was cognizable in this proceeding, the record refutes Movant's claim that both counts of second-degree domestic assault (Counts XII and XIII) constitute the same offense. In his amended motion, Movant alleged that he could not be convicted and sentenced for two separate offenses under Counts XII and XIII because there was a "continuing course of conduct" that was "uninterrupted." Specifically, Movant claims the State failed to establish that he committed more than one offense arising from the same set of facts or that the offenses constituted separate crimes, in violation of § 556.041(4), RSMo[2] and the prohibition against double jeopardy. Movant asserts that had his attorneys argued that his conduct constituted one single act of domestic assault, there is a reasonable probability that the trial court would have vacated his conviction and sentence on one of the counts. Movant complains that because he was "punished more than once for a single offense," the conviction and sentence on either Count XII or Count XIII should be discharged and vacated.

Section 565.073.1 states, in pertinent part:

---

[2] All statutory references are to RSMo 2000, as supplemented, unless otherwise indicated.

10

A person commits the crime of domestic assault in the second degree if the act involves a family or household member or an adult who is or has been in a continuing social relationship of a romantic or intimate nature with the actor, . . . and he . . . (1) [a]ttempts to cause or knowingly causes physical injury to such family or household member by any means, including but not limited to, by use of a deadly weapon or dangerous instrument, or by choking or strangulation[.]

Section 556.041, provides, in pertinent part:

When the same conduct of a person may establish the commission of more than one offense he may be prosecuted for each such offense. He may not, however, be convicted of more than one offense if: . . .

(4) The offense is defined as a continuing course of conduct and the person's course of conduct was uninterrupted, unless the law provides that specific periods of such conduct constitute separate offenses.

Movant asserts that pursuant to § 556.041(4), he should not have been convicted of both domestic assault offenses because the evidence at trial established that he grabbed Victim around the neck with his hands twice during the same incident and as part of a continuing course of conduct that was uninterrupted. We disagree.

While § 556.041 provides that a person may not be convicted of more than one offense if the offense is defined as "a continuing course of conduct" and where the conduct is "uninterrupted," the statute does not prohibit multiple convictions based on the same conduct where the evidence establishes the commission of more than one offense. *See State v. Gray*, 347 S.W.3d 490, 507 (Mo. App. E.D. 2011). Moreover, while the double jeopardy clause bars multiple punishments for the same offense, it is not violated by punishing a defendant for more than one offense arising from the same set of facts. *State v. Tipton*, 314 S.W.3d 378, 380 (Mo. App. S.D. 2010). This is because "separate assault offenses can arise from a single set of facts each time the defendant forms an intent to attack the victim." *Id.* (citation and quotations omitted).

11

The domestic assault offenses at issue are not defined as "continuing courses of conduct." To the contrary, § 565. 073.1 defines the crime as an "act" committed "by any means, including but not limited to, by use of a deadly weapon or dangerous instrument, or by choking or strangulation." Moreover, multiple acts of assault are distinguishable from offenses "that intrinsically involve a continuing course of conduct such as false imprisonment, bigamy and operating a house of prostitution." *See State v. Lucy*, 439 S.W.3d 284, 291 (Mo. App. E.D. 2014).

Although separate acts may be part of the same transactions or set of circumstances, they are still separate offenses by law. *See Bland v. State*, 805 S.W.2d 192, 194 (Mo. App. W.D. 1991) (multiple convictions for several acts of sodomy upheld). Within the context of assault crimes, separate offenses can arise from "a single set of facts each time the defendant forms an intent to attack the victim." *State v. Tyler*, 196 S.W.3d 638, 642 (Mo. App. W.D. 2006). The facts of each case determine whether there has been a single offense or multiple crimes committed, including factors of time, place, and defendant's intent. *See State v. Jackson*, 410 S.W.3d 204, 216 (Mo. App. W.D. 2013).

Here, the motion court found that "the two instances of choking were separate incidents, separated in time and by other intervening events." The record supports this finding. At trial, Victim testified about the events that took place during the last weekend in March 2008. In particular, Victim described two incidents that occurred on March 29, 2008, where Movant assaulted her by choking and strangling her. One of the assaults occurred shortly after Victim had finished taking a bath. Victim said that Movant pulled her out of the bathroom while she was naked and pushed her down onto a mattress. At that point, Victim indicated that she sat up on the mattress with her back against a love seat and that Movant began "questioning" her.

Movant then picked up a golf club, swung it back, and threatened to "bust" Victim in the head. As Victim put her hands up to brace for the blow, Movant dropped the golf club and placed both hands around her neck. He then began choking her until she could not breathe. While choking Victim, Movant said that he "would kill" her. Movant then forced Victim to have sex.

Victim also described a second assault that occurred the same day. Victim testified that the second incident occurred when Movant "grabbed [her] around the neck with his hands" and began strangling her. Victim said that while Movant was strangling her the second time, he was extremely angry and she believed he could really kill her. The evidence was sufficient to establish separate acts of domestic assault. The motion court did not err in denying Movant's claim without an evidentiary hearing. Point II is denied.

### Conclusion

For the foregoing reasons, the motion court's judgment is affirmed.

_____
Philip M. Hess, Judge

Sherri B. Sullivan, P.J. and
Mary K. Hoff, J. concur.

13