

# Missouri Court of Appeals

## Southern District

### Division Two

EDDIE A. SALAZAR,     )
            )
    Appellant,    )
            )
  vs.         )  No. SD34123
            )  Filed:  September 15, 2016
STATE OF MISSOURI,    )
            )
    Respondent.   )

### APPEAL FROM THE CIRCUIT COURT OF JASPER COUNTY

Honorable David C. Dally, Circuit Judge

### AFFIRMED

Eddie A. Salazar ("Salazar") appeals from the judgment of the motion court denying his amended Rule 29.15[1] motion to set aside his conviction for the class A felony of murder in the second degree. *See* § 565.021. Salazar challenges the judgment of the motion court in four points on appeal. Finding no merit to any of Salazar's points, we affirm the judgment of the motion court.

---

[1] All rule references are to Missouri Court Rules (2015). All references to statutes are to RSMo 2000.

**Factual and Procedural Background**[2]

We set forth only those facts necessary to complete our review. In doing so, we view the evidence in the light most favorable to the motion court's judgment. ***McCauley v. State***, 380 S.W.3d 657, 659 (Mo.App. S.D. 2012).

On the evening of February 4, 2010, Salazar's son, while in Salazar's care, died from blunt force trauma to the head. Salazar then threw his son's body into a nearby river. He staged cuts and scrapes on himself to make it appear as though he had been in a fight. Salazar then called authorities and claimed that two men had entered his home and kidnapped his son. After Salazar gave several contradictory versions of what happened, his son's body was found in the river, and Salazar was charged by amended information as a prior offender for the class A felony of second-degree murder.

During a pre-trial motion hearing, the following colloquy occurred:

> BY [TRIAL COUNSEL]: Judge, I am concerned about the way I understand we're going to conduct the voir dire with, I guess, 56 jurors, potential jurors brought into the courtroom. If we do that, that is going to take up every bit of the seating in the courtroom. I understand there is only limited seating in the courtroom, but on the other hand Mr. Salazar does have a right under the Sixth and the Fourteenth Amendments to the U.S. Constitution, Article I, Section 18A of the Missouri Constitution to a public trial. I'm sure there will probably be family members of Mr. Salazar, and perhaps other people that would like to attend the trial.
>
> And I would ask for some accommodations, so it is possible to have a public presence during the entire trial including voir dire. Otherwise, I think he would be denied his right to a public trial.
>
> BY THE COURT: They can attend the trial, but there is not going to be room in here during the voir dire and there is never room in here for the voir dire. And so I don't know of any accommodations that we can make. So that request is going to be denied.

---

[2] We borrow freely from Salazar's direct appeal without further attribution. ***State v. Salazar***, 414 S.W.3d 606 (Mo.App. S.D. 2013) (***Salazar I***). A detailed account of the facts underlying Salazar's conviction is contained in that opinion.

On the morning of trial, the following occurred:

> BY [TRIAL COUNSEL]: I think, finally, Judge, I've got this motion on the record from last week, but I do object to the exclusion of the public during voir dire on the basis of the 6th and 14th amendments to the United States Constitution Article I, Section 8 today and according to the Missouri State Constitution and the First Amendment to the United States Constitution.

> BY THE COURT: All right. And so the record is clear we have summons – how many people, Carl? 60 - 63 people. We have normally room for 43 individuals in our courtroom. To make room for the extra people the Court has taken out chairs that are in front of the bar and put in a bench which still accommodates 53 people. 56 people.

> And so that takes up every seat that we have in this courtroom. Counsel's table is full. In fact, I don't know where — if the prosecutors were planning on putting their . . . stuff. We have to cram them in as it is. So there is no room for anybody else in this courtroom and because of that during voir dire anybody else will be excluded from the courtroom.

> BY [TRIAL COUNSEL]: Motion is overruled and continuing, Judge?

> BY THE COURT: Yes.

At trial, the State moved for admission in evidence of State's Exhibit 3, designated as a "DVD [Salazar] interview HP," which referenced Salazar's prior prison time and drug use; State's Exhibit 6, designated as a "DVD [Salazar] interview CPD," also referencing Salazar's prior prison time and drug use; and State's Exhibit 13, designated as a "Photo [Salazar] rt side stomach," showing scratches on Salazar's body, but which also showed a tattoo Salazar claimed to be a "gang tattoo."[3] Trial counsel made general objections to the introduction of these exhibits, but the objections were overruled and the exhibits were admitted. Trial counsel did not make specific and timely objections to the references to drug use and prison time in State's Exhibit 6.

---

[3] Salazar did not deposit with this Court, in this appeal, State's Exhibits 3, 6, and 13, as allowed by Rule 30.05 and Rule 4 of the Southern District Special Rules. When an exhibit is omitted from the record on appeal and is not deposited with the appellate court, "its intendment and content will be taken as favorable to the trial court's ruling and as unfavorable to the appellant." *State v. Hawkins*, 328 S.W.3d 799, 810 n.3 (Mo.App. S.D. 2010) (internal quotation and citation omitted). It is noted, however, that Salazar's Exhibit 5 (photograph of Salazar's torso), deposited with this Court, has a sticker on the back designating it as "State's Exhibit 13."

3

The jury found Salazar guilty of second-degree murder, and Salazar was sentenced to life in prison. After his conviction was affirmed by this Court on direct appeal, mandate issued December 26, 2013.

On March 24, 2014, Salazar filed a timely *pro se* Rule 29.15 motion for post-conviction relief. On April 23, 2014, post-conviction counsel was appointed. On July 20, 2014, after an extension was granted, counsel filed a timely Rule 29.15 amended motion. *See Moore v. State*, 458 S.W.3d 822, 825 (Mo. banc 2015).

A hearing was held on June 3, 2015. Salazar's trial counsel testified at the hearing, and Salazar's appellate counsel testified via deposition. On September 9, 2015, the motion court entered its "Findings of Fact, Conclusions of Law and Judgment" denying Salazar's Rule 29.15 motion. This appeal followed.

In four points on appeal, Salazar asserts:

1. The motion court clearly erred in finding that trial counsel was not ineffective for failing to make an offer of proof that there were people who attempted to attend voir dire, but were excluded, thereby depriving Salazar of a fair trial.

2. The motion court clearly erred in finding that appellate counsel was not ineffective for failing to raise on Salazar's direct appeal the issue that the trial court erred in admitting State's Exhibit 13, which contained evidence of what Salazar claims is a gang tattoo on his person.

3. The motion court clearly erred in finding that trial counsel was not ineffective for failing to object to the introduction of State's Exhibit 6, which contained a videotaped interview of Salazar in which he referenced his prior drug use and prison time.

4. The motion court clearly erred in finding that appellate counsel was not ineffective for failing to raise on Salazar's direct appeal the trial court's error in allowing the introduction of State's Exhibit 3, which contained a videotaped interview of Salazar in which he referenced having used drugs and serving prison time.

4

**Standard of Review**

This Court's review of a motion court's denial of a motion for post-conviction relief is limited to a determination of whether the motion court's findings of fact and conclusions of law are clearly erroneous. Rule 29.15(k). A motion court's findings and conclusions are "clearly erroneous only if this Court is left with a definite and firm impression that a mistake has been made." *Mallow v. State*, 439 S.W.3d 764, 768 (Mo. banc 2014). A motion court's findings are presumed correct, and we defer to the motion court's credibility determinations. *Davis v. State*, 486 S.W.3d 898, 905 (Mo. banc 2016).

Under *Strickland v. Washington*, 466 U.S. 668, 687 (1984), a movant must show that (1) counsel failed to exercise the skill and care of a reasonably competent attorney, and (2) movant was prejudiced by counsel's deficient representation. For the first prong of the test, there is a strong presumption that counsel's conduct was reasonable. *Smith v. State*, 370 S.W.3d 883, 886 (Mo. banc 2012). To overcome this presumption, movant must point to "specific acts or omissions of counsel that, in light of all the circumstances, fell outside the wide range of professional competent assistance." *Zink v. State*, 278 S.W.3d 170, 176 (Mo. banc 2009) (internal quotation and citation omitted). Under the second prong, prejudice occurs only where there is a reasonable probability that, but for counsel's deficient representation, the outcome of the trial would have been different. *Deck v. State*, 68 S.W.3d 418, 429 (Mo. banc 2002).

For ease of analysis, we address Salazar's points out of order.

**Analysis**

*Point I: Offer of Proof Regarding Public Presence in Voir Dire*

In Salazar's first point on appeal, he claims that the motion court clearly erred in finding that trial counsel was not ineffective for failing to make an offer of proof regarding family members and press that were excluded from voir dire, thereby depriving Salazar of a public trial.

"[T]he Sixth Amendment right to a public trial extends to the *voir dire* of prospective jurors." *Presley v. Georgia*, 558 U.S. 209, 213 (2010). "[W]hether a defendant's right to a public trial has been violated is a question of law subject to *de novo* review." *State v. Williams*, 328 S.W.3d 366, 369 (Mo.App. W.D. 2010). Generally, "the defendant should not be required to prove specific prejudice in order to obtain relief for a violation of the public-trial guarantee." *Waller v. Georgia*, 467 U.S. 39, 49 (1984). "The denial of the right to a public trial is structural error that requires no showing of prejudice." *Crawford v. Minnesota*, 498 F.3d 851, 854 (8th Cir. 2007) (citing *Waller*, 467 U.S. at 49–50). Further, the defendant has no duty to suggest alternatives to closure.

> The conclusion that trial courts are required to consider alternatives to closure even when they are not offered by the parties is clear not only from [Supreme Court] precedents but also from the premise that 'the process of juror selection is itself a matter of importance, not simply to the adversaries but to the criminal justice system.'

*Presley*, 558 U.S. at 214 (quoting *Press–Enterprise Co. v. Superior Court of Cal., Riverside Cty.*, 464 U.S. 501, 505 (1984)).

Exceptions to the defendant's right to a public voir dire of potential jurors do arise. As the Supreme Court explained in *Presley*, "'the defendant's right to a fair trial or the government's interest in inhibiting disclosure of sensitive information'" could present such exceptional circumstances. *Id.* at 213 (quoting *Waller*, 467 U.S. at 45). Borrowing from *Waller*, the Supreme

6

Court in **Presley** identified four steps to ensure the proper balance between the competing interests: (1) an "'overriding interest that is likely to be prejudiced'" by a public proceeding must be stated; (2) "'the closure must be no broader than necessary to protect that interest'"; (3) "'the trial court must consider reasonable alternatives to closing the proceeding'"; and (4) "'it must make findings adequate to support the closure.'" 558 U.S. at 214 (quoting **Waller**, 467 U.S. at 48). "Trial courts are obligated to take every reasonable measure to accommodate public attendance at criminal trials." **Presley**, 558 U.S. at 215.

Salazar claims that trial counsel was ineffective because he failed to make an offer of proof demonstrating there were members of the public who wanted to attend the voir dire portion of the trial and were prevented from doing so. However, this argument ignores the testimony of Salazar's trial counsel: "I want to make sure my testimony is accurate. I think it's understood. When you asked me if people were excluded from the jury room [sic] and I said yes, I was referring to the Judge's ruling, not that I knew specifically certain people were." He admitted on cross-examination that he never identified anyone who wanted access to voir dire and was excluded, that the record reflected this, and that this was why the matter was unsuccessful on direct appeal. Additionally, Salazar's argument ignores the factual findings of the motion court, to which we must defer:

> No evidence presented by movant would show that the family members and friend who now claim they wanted to enter the courtroom were available to [trial counsel] at the time when an offer of proof could have been made. This court finds it difficult to believe that the mother, sister and friend of [Salazar] were present and denied access to the courtroom considering one thought the door was locked and the others could not remember who instructed them not to enter. It certainly was not shown that they ever made their presence known to [trial counsel]. It was also not shown when during the proceedings they arrived.

In Salazar's direct appeal, we held that a new trial need not be ordered "when there is no evidence that a member of the public actually attempted to attend *voir dire* and was prohibited

7

from doing so." ***Salazar I***, at 616. Based on that precedent, and the fact that the motion court found the testimony on which Salazar's claim is based not credible, *see **Davis***, 486 S.W.3d at 905, we must reject Salazar's first point. In the absence of credited evidence that trial counsel was aware at the time of voir dire that members of the public had attempted to come into the courtroom but were not allowed in, trial counsel cannot be said to have been ineffective in failing to present evidence of such persons to the court.

The motion court did not abuse its discretion in not finding that trial counsel was ineffective for failing to make an offer of proof that there were people who wanted to be in the courtroom during voir dire but were denied access. Point I is denied.

### Point III: Failure of Trial Counsel to Object to State's Exhibit 6

In his third point, Salazar argues that the motion court clearly erred in finding that trial counsel was not ineffective for failing to object to statements in State's Exhibit 6 that referenced Salazar's prior prison time and drug use.

Salazar's interview with police was admitted without objection as State's Exhibit 6, and played for the jury. Salazar contends that trial counsel should have objected to the following statements contained in State's Exhibit 6:[4]

Q. [Officer Renken:] How long has it been since you've seen Juan Mendoza?

A. [Salazar:] It's been since '08 when I first got out.

Q. [Officer Renken:] 2008?

A. [Salazar:] Yes. He always called me once in awhile, [sic] asking, like always, all question, like trying to implicate, asking me if there was anybody I knew might need ice and stuff like that. And I was like, no, I don't mess with that no more, it's not me, you know.

---

[4] While Salazar did not file State's Exhibit 6 with this Court, Salazar directs us to Movant's Exhibit 2, that was filed with this Court, which is a transcription of Salazar's recorded interviews with law enforcement as contained on State's Exhibits 3 and 6 (DVDs), admitted in evidence at trial.

8

Salazar's trial counsel testified that he "probably" had a concern at the time this evidence was introduced that the jury would infer that Salazar had spent time in prison, but could not remember either way. He also testified that in hindsight, he "probably" would have been concerned that the reference to "ice" would lead the jury to believe that Salazar had a prior drug charge. Trial counsel indicated that he did not recall a specific strategic reason for not making the objection.

The motion court found that Salazar failed to show that he was prejudiced by the evidence at issue.

> Ineffectiveness is rarely found in cases where trial counsel has failed to object. The mere failure to object to objectionable evidence or argument does not establish ineffective assistance of counsel. In many instances seasoned trial counsel do not object to otherwise improper questions or arguments for strategic purposes. In particular, it is feared that frequent objections irritate the jury and highlight the statements complained of, resulting in more harm than good.

*Bracken v. State*, 453 S.W.3d 866, 871 (Mo.App. E.D. 2015) (internal quotations and citations omitted).

Movant has the burden to overcome the strong presumption that any omissions by trial counsel were trial strategy. *Bullock v. State*, 238 S.W.3d 710, 715 (Mo.App. S.D. 2007). "A movant does not overcome the strong presumption that counsel had a strategic reason for his decision even where trial counsel fails to verbalize a trial strategy for his decision." *Rios v. State*, 368 S.W.3d 301, 310 (Mo.App. W.D. 2012) (citing *Bullock*, 238 S.W.3d at 715). Salazar therefore fails to show that trial counsel's choice not to object was not strategic. As the motion court correctly noted in its findings, these were isolated comments in the context of a three-day trial—further, these comments were not relied upon by the State in closing argument. Salazar fails to show that, in the absence of the introduction of these isolated comments, the outcome of the trial

would likely have been different. ***Deck***, 68 S.W.3d at 429. Therefore, Salazar fails on both prongs of the ***Strickland*** test.

Salazar fails to show that the motion court clearly erred in finding that trial counsel was not ineffective for failing to object to the introduction of the challenged contents of State's Exhibit 6. Point III is denied.

### Points II and IV: Failure of Appellate Counsel to Present Claims on Appeal Regarding State's Exhibits 13 and 3

In his second and fourth points, Salazar argues that the motion court abused its discretion in finding that appellate counsel was not ineffective for failing to raise on appeal: (1) the introduction of State's Exhibit 13, which Salazar claims showed a "gang tattoo" on his back, and (2) the introduction of portions of State's Exhibit 3,[5] a recorded interview in which Salazar refers to having served time in prison. Because these points deal largely with the same legal subject matter, we combine them for ease of analysis.

Salazar's second point that appellate counsel was ineffective for failing to raise on appeal the introduction of State's Exhibit 13, was directly addressed by Salazar's appellate counsel at the post-conviction relief hearing:

> Q.    And the issue regarding the Sureno tattoos, again, why did you—you said you did not bring it up because you felt you had better points. Do you think if you had brought this claim that it would have weakened your other claims I believe is what you said; is that correct?
>
> A.    I thought it could weaken the other claims and I didn't believe that I had the chance for a new trial on that particular claim so I didn't raise it.

---

[5] Salazar's point relied on also asserts that State's Exhibit 3 made improper reference to drug use by Salazar. However, Salazar did not identify at the motion hearing or in his brief on appeal a statement in State's Exhibit 3 that references Salazar's drug use. Salazar's appellate counsel was not questioned in his deposition about any comment of appellant regarding drug use. That portion of Salazar's claim is therefore waived. ***State v. Crawford***, 914 S.W.2d 390, 393 (Mo.App. E.D. 1996).

Q.     Then you said you did not believe it would be successful. What led you to that conclusion?

A.   I didn't believe that—first of all, I'm not certain that most members of the jury would have recognized it as a reference to a gang.  In fact, I didn't recognize it as a reference to a gang.

And, secondly, it just didn't seem to me to be, go to the real issue as to what the [Salazar]'s intent was.  This wasn't like a gang related shooting or something like this.  It was the death of his child and I didn't believe that it really went to the heart of the defense or to the prosecution.  So I didn't believe it to be prejudicial.

The motion court credited this testimony, and agreed with appellate counsel that this claim would not have "been of any value to [Salazar]."

To overcome that presumption in the context of a claim of ineffective assistance of appellate counsel, "the movant must establish that counsel failed to raise a claim of error that was so obvious that a competent and effective lawyer would have recognized and asserted it." *Williams v. State*, 386 S.W.3d 750, 753 (Mo. banc 2012) (internal quotation and citation omitted). Nevertheless, "appellate counsel is not ineffective for failing to raise every non-frivolous claim on appeal but may use his professional judgment to focus on the most important issues." *Sykes v. State*, 372 S.W.3d 33, 41 (Mo.App. W.D. 2012) (internal quotation and citation omitted).  A post-conviction movant fails to prove counsel's performance is deficient when appellate counsel testifies he or she did not raise a particular issue because he or she believed it would be without merit, and the motion court credits that testimony. *See id.* at 41–42.

Here, the motion court credited the testimony of appellate counsel that he used his professional judgment to focus on what he reasonably deemed to be the most important and meritorious issues, and excluding an issue which he felt was weaker—that is, the admission of State's Exhibit 13. *See id***.** The motion court did not abuse its discretion in finding that appellate

counsel was not ineffective for failing to assert on appeal the argument that the trial court erred in admitting State's Exhibit 13. Point II is denied.

Our review regarding Salazar's Point IV, failure of appellate counsel to challenge on appeal the admission of State's Exhibit 3, follows the same line of reasoning.

Trial counsel objected at trial to the introduction of Salazar's statement that "I didn't mean it to happen, it was an accident, I was scared they weren't going to believe me because of my record and what I had done in the past," which was contained in State's Exhibit 3. Trial counsel preserved this issue for appeal in a motion for new trial, but appellate counsel did not include this issue in Salazar's direct appeal.

Appellate counsel testified that although he had considered raising the claim, he ultimately rejected it. He explained:

> I had what I believed to be three pretty strong claims, one very strong claim that I was raising on appeal, and I thought that the addition of other claims that I didn't believe would warrant a new trial would take away from the three I was going to raise.
>
> And, secondly, I didn't believe that the statement, 'because of my record and what I had done in the past,' was particularly prejudicial in light of the videotape statements that Mr. Salazar had given in the case; and so I didn't believe that the Court of Appeals would grant a new trial on that claim.

Appellate counsel also explained that Salazar's statement was vague because "there was really no indication as to what kind of record or what kind of past" he was talking about.

The motion court credited appellate counsel's testimony, and agreed with his assessment regarding the merits of the claim. "[A]ppellate counsel is not ineffective for failing to raise every non-frivolous claim on appeal but may use his professional judgment to focus on the most important issues." *Sykes*, 372 S.W.3d at 41. The motion court did not clearly err in finding that

12

appellate counsel was not ineffective for failing to raise the Exhibit 3 claim on appeal.  Point IV is denied.

The judgment of the motion court is affirmed.

WILLIAM W. FRANCIS, JR., J. - OPINION AUTHOR

NANCY STEFFEN RAHMEYER, J. - DISSENTS IN SEPARATE OPINION

DANIEL E. SCOTT, J. – CONCURS



# Missouri Court of Appeals

## Southern District

### Division Two

EDDIE A. SALAZAR,                          )
                                           )
    Movant-Appellant,              )
                                           )
vs.                                        )    No. SD34123
                                           )    **Filed:** September 15, 2016
STATE OF MISSOURI,                         )
                                           )
    Respondent-Respondent.         )

APPEAL FROM THE CIRCUIT COURT OF JASPER COUNTY

Honorable David C. Dally, Circuit Judge

**<u>DISSENT</u>**

I respectfully dissent.  As the principal opinion points out, the Sixth Amendment right to a public trial extends to *voir dire* in a criminal case and the denial of that right is structural error that requires no showing of prejudice.  In Salazar's direct appeal, we found that the trial court denied Salazar's right to a public trial by excluding the public from *voir dire* in Salazar's criminal case but, as the principal opinion also notes, held in a case of first impression in Missouri that a new trial was not required because there was no evidence that a member of the public "actually attempted to attend *voir dire* and was prohibited from doing so."  The principal opinion then concludes that: "In the absence of credited evidence that trial counsel was aware at the time of *voir dire* that members of the public had attempted to come into the courtroom but

1

were not allowed in, trial counsel cannot be said to have been ineffective in failing to present evidence of such persons to the court."

I disagree. One week before trial in the pretrial hearing referred to in the principal opinion, trial counsel specifically told the trial court: "I'm sure there will probably be family members of Mr. Salazar, and perhaps other people that would like to attend the trial." In the face of trial counsel's declaration one week before trial, "I'm sure there will probably be family members . . . that would like to attend the trial," trial counsel acted in a professionally unreasonable manner in not affirmatively (1) identifying those family members and providing that information to the trial court when trial counsel renewed his objection to the exclusion of the public from *voir dire* on the morning of trial, or (2) determining that there were no family members that wished to attend the trial. Although trial counsel testified that he did not "kn[o]w specifically certain people were" excluded from the courtroom during trial and "never identified any person who wanted to be in" the courtroom, trial counsel did not testify that he made any effort to identify the family members that a week earlier he told the trial court he was "sure probably" would like to attend the trial.

Recently, in *Christian v. State*, No. SD33998, 2016 WL 4582181 (Mo.App. S.D. Sept. 2, 2016), we found that a motion court's conclusions that trial counsel was not ineffective and the movant was not prejudiced by trial counsel's deficient performance were clearly erroneous. In doing so, we held that trial counsel was ineffective for failing to object to the reading to a jury in the defendant's criminal case of the defendant's invocations of his Fifth Amendment privilege in a deposition taken in a related civil suit – after we determined as a matter of first impression in Missouri that reading to the criminal jury the defendant's invocations of his Fifth Amendment privilege in the civil deposition was a violation of the defendant's Fifth Amendment right not to

2

"be compelled in any criminal case to be a witness against himself." I believe the principles applied in *Christian* should be applied in this appeal. The trial court denied Salazar's right to a public trial, and that denial would have required reversal of Salazar's conviction but for trial counsel's failure to identify family members who wanted to attend the trial and provide that information to the trial court when trial counsel renewed his objection to the exclusion of the public from *voir dire* on the morning of trial. Family members that trial counsel had told the trial court, only one week before trial, he was "sure probably" would like to attend trial.

The motion court clearly erred in concluding that trial counsel was not ineffective, and I would reverse the motion court's judgment, vacate Salazar's conviction and sentence and remand for a new trial.


Nancy Steffen Rahmeyer, J. – Dissenting Opinion Author