**Randall RICKEY, Appellant,**

v.

**STATE of Missouri, Respondent.**

**No. WD 59161.**

Missouri Court of Appeals,
Western District.

Aug. 7, 2001.

---

Mark A. Grothoff, Asst. Public Defender, Columbia, MO, for Appellant.

Jerremiah W. (Jay) Nixon, Atty. Gen., Lisa M. Sutherland, Asst. Atty. Gen., Jefferson City, MO, for Respondent.

HOLLIGER, Judge.

## FACTS

Randall Rickey, after the motion court denied his Rule 29.15 motion following evidentiary hearing, appeals the decision to this court. The relevant facts are as follows:

Mary Thorpe, the victim, lived alone in her home in Columbia, Missouri. On October 18, 1997, Rickey came to her home and told her that the roof of her house was in poor condition and needed repair. Two years prior to her encounter with Rickey, Ms. Thorpe had had a new roof placed on her house and had not experienced any problems with the roof up to this point. Mr. Rickey offered to do the repairs to the roof for only three dollars and Thorpe agreed.

On October 23, 1997, Rickey returned to Thorpe's home and came to her back door as he had done the previous time. Rickey went into the home and told Thorpe that he needed to place a substance on her roof in order to repair it. Thorpe then agreed to let Rickey do the work. Rickey then informed Thorpe that the repairs would cost $1500. Thorpe responded by telling him that she could not pay him that amount. Upon hearing this, they settled on a repair price somewhere between $300 and $400. Once Rickey had informed Ms. Thorpe that he had finished the repairs, she paid him in cash.

On October 30, 1997, Rickey returned to Thorpe's home for a third time and informed her that she still owed $871 for the repairs made to her roof. Rickey explained to Thorpe that if she did not pay him he would sue her. Afraid of the potential lawsuit, Thorpe wrote out a check for $871. That same day Rickey cashed the check.

On November 5, 1997, Rickey returned to Thorpe's house, accompanied this time by a man whom Mr. Rickey claimed to be his lawyer. When Thorpe asked the lawyer to present some form of identification, he refused to do so. Rickey then told Thorpe that she still owed him money. Again he informed her that if she did not pay him he would sue her and take her house. Thorpe attempted to reach for the phone to call a friend, but Rickey moved between her and the phone. Afraid, Thorpe went to the spare bedroom where she kept an envelope filled with cash. She then instructed Rickey and his attorney not to follow her. Rickey ignored this and followed her into the bedroom anyway. Thorpe then took $100 out of the envelope for Rickey and laid the envelope on the bed where Rickey was seated. She then left the room. Rickey followed her.

Later that afternoon, Thorpe went back to the spare room to get the envelope and take the money to the bank. To her surprise the envelope containing between $3000 and $4000 was gone. No one had been in the room since Rickey left.

A police investigation determined that Thorpe's roof had not been in need of repair and that the black substance Rickey had placed on a portion of her roof was of no value. Prior to the trial Thorpe identified Rickey from a photo lineup.

During pre-trial conference, defense counsel filed a motion in limine to suppress Thorpe's identification of Rickey in the police lineup. The defense counsel argued that the photographs used for the lineup were not similar enough to the photograph of Rickey as to constitute a fair lineup. Thorpe testified as follows as to her out-of-court identification of Rickey:

Q: Okay. Let me show you State's Exhibit No. 8. Just ask you if you can identify what that exhibit is. Have you seen this before?

[Defense Counsel]: Excuse me a moment, please.

A: Yes, I have.

[Defense Counsel]: At this point, Your Honor, may I enter an objection pursuant to my motion in the line of questioning generally?

[The Court]: This motion is heard and by the Court overruled.

A: What's that.

Q: You can answer.

[Defense Counsel]: Well, excuse me. Do I need to do this again?

[The Court]: No. I'll take it as a continuing objection.

[Defense Counsel]: Thank you, sir.

A: Am I doing anything wrong?

Q: No, you're not. He has a right to make objections from time to time.

A: Okay.

Q: That's all he's doing, okay?

A: Okay.

Q: Have you seen these before?

A: Yes, sir.

Q: Okay, did Detective Ross show these to you?

A: Yes, he did.

Q: And when he showed these to you, did he ask you to see if you could identify anybody?

A: Yes, he did.

Q: And did he suggest to you in any way who to point out?

A: None at all.

Q: Did he just ask you to see if you recognized anybody?

A: Yes, he did.

Q: Okay. And did you do that?

A: Yes, sir.

Q: And Ms. Thorpe, I'd like to ask you, did you point anybody out to Detective Ross?

A: I pointed this one out.

Q: Okay. The top one on the left side? There's two photographs there.

A: Yes, sir.

Q: The top one?

A: Yes.

Q: Okay. I just wanted to make sure. All right. And what did you tell?

A: I said, "That's the one" or words to that effect.

Q: The one who had been to your house all four times?

A: Yes, that's right. So-called roofer.

Q: Okay.

A: The scam artist.

[Defense Counsel]: I've already made the objection; right, Your honor?

[The Court]: Yes, sir.

After deliberation, the jury found Rickey guilty on all counts. Rickey was sentenced as a prior and persistent offender to a total of 17 years imprisonment. On July 9, 1998, Rickey filed a notice of appeal. This court affirmed Rickey's convictions on October 29, 1999. *See State v. Rickey*, WD 57079 (Mo.App. W.D.1998).

On May 2, 2000, Rickey filed an amended Rule 29.15 motion for post-conviction relief. An evidentiary hearing was held on May 12, 2000. Testifying at the hearing were Rickey and his trial counsel, Jan

King. When asked about Thorpe's testimony Rickey's trial counsel testified:

Q: Okay. In regard to Ms. Thorpe testifying again, she referred to Mr. Rickey as a scam artist in response to a question. Then did you object to that? This would be found around at transcript page 108.

A: I might have missed it.

Q: Do you recall that?

A: I don't even remember it.

Q: Would it refresh your memory to see the transcript from the trial?

A: Probably not. I mean I take your word for it. I know I didn't object to that. I would have remembered doing that. I know I did not object to it. I don't even remember if I heard it.

Q: You wouldn't quibble—

A: No.

Q: —with the record if it indicates you did not object?

A: No, I wouldn't.

Q: Do you have any reason not to object to her characterization of your client?

A: Well, as I recall she said several things like that. Which she got away with. I think I objected. I don't remember, but it seemed like I objected to some characterization at some point. You'd have to check the record to see if I actually did that. But—

Q: So you believe that you would think—

A: I thought I was not going to be successful if I gave it any thought at all.

The motion court entered judgment denying Rickey's request for post-conviction relief. The motion court found that the statement by the witness was unsolicited, tangential and isolated. This appeal followed.

## I

In his sole point on appeal, Rickey alleges that the motion court erred in denying his 29.15 motion because his trial counsel's failure to object to Thorpe's testimony classifying Rickey as a "scam artist" amounted to ineffective assistance of counsel. Rickey further alleges that the jury was prejudiced as a direct result of this error because they were allowed to consider a conclusion as to the ultimate issue in this case.

### Standard of Review

■ Appellate review of the denial of post-conviction relief is limited to whether the motion court's findings of fact and conclusions of law are clearly erroneous. Supreme Court Rule 29.15(k); *Skillicorn v. State*, 22 S.W.3d 678, 681 (Mo. banc 2000). Findings of fact and conclusions of law are deemed clearly erroneous if the appellate court, after reviewing the entire record, is left with a "firm and definite impression that a mistake has been made." *Sanders v. State*, 738 S.W.2d 856, 857 (Mo. banc 1987).

■ In order for a movant to prevail on an ineffective assistance of counsel claim, he must satisfy a two-prong test. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). First, he must prove that counsel's performance was deficient in that counsel failed to exercise the customary skill and diligence that a reasonably competent attorney would manifest under similar circumstance. *Id.* at 687, 104 S.Ct. 2052. Then, he must prove that he was prejudiced as a result of the deficient performance. *Id.* To satisfy the prejudice prong the movant must prove by a "reasonable probability that, but for counsel's ineffectiveness, the

result of the trial would have been different." *Moore v. State,* 827 S.W.2d 213, 215 (Mo. banc 1992).

A reasonable probability exists if there is a "probability sufficient to undermine confidence in the outcome." *Id.*

■ In Missouri there is a presumption that counsel acted professionally in making decisions and that any challenged actions were part of counsel's sound trial strategy. *State v. Hall,* 982 S.W.2d 675, 680 (Mo. banc 1998). The Supreme Court ruled in *Jones v. State,* 784 S.W.2d 789, 793 (Mo. banc 1990), that a defendant "may be held to the consequences of counsel's failure to object, whether the failure is the result of a strategic decision, or is due to inadvertence. The fact that a meritorious objection is not made does not demonstrate incompetence" *Id.* There must be a showing that counsel's overall performance fell short of established norms and that this incompetence probably affected the result. *Id.*

■ Rickey bears the burden of proving that the failure to object was not strategic and that the failure was prejudicial. *State v. Clay,* 975 S.W.2d 121, 135 (Mo. banc 1998). In order to prove that his counsel was ineffective for failing to object to Thorpe's description of Rickey as a "scam artist," Rickey would have to show that 1) the objection would have been meritorious, and 2) that failure to object resulted in substantial deprivation of Mr. Rickey's right to a fair trial. *Ruff v. State,* 815 S.W.2d 460, 465 (Mo.App. E.D.1991).

The Missouri Supreme Court has recognized that there are many instances in which a seasoned trial attorney does not object to otherwise improper statement for strategic purposes. *State v. Tokar,* 918 S.W.2d 753, 768 (Mo. banc 1996). Some attorneys feel that frequent objections highlight the statements complained of, resulting in more harm than good. *Id.* Although Rickey's trial counsel testified that he did not remember the specific comments at issue, his inability to remember why he took a specific course action during trial does not establish lack of competent performance.

■ It is this court's opinion that Rickey failed to show by a reasonable probability that the outcome of the trial would have been different had his trial counsel objected to the remark made by Thorpe. Although Rickey asserts that his trial counsel's failure to object to Thorpe's testimony allowed the jury to hear an ultimate conclusion as to the vital issue in the case, resulting in prejudice against him, this claim has no merit. Even though it is improper for a witness to give testimony regarding a conclusion when that conclusion has the effect of answering an ultimate issue the jury is to determine, *State v. Cason,* 596 S.W.2d 436, 440 (Mo.1980), Thorpe's comment was merely a comment based on her experience with Rickey. In the present case, the ultimate issue for the jury to consider is whether, on three separate occasions, Rickey obtained property or currency from Thorpe through deceit by representing to her that her roof was in need of repair. Further, the jury then had to determine that such representation was false, and that Thorpe, in reliance upon the representation, parted with the property. The jury was never instructed to decide whether or not Rickey was a "scam artist." In light of the evidence of Thorpe's identifying Rickey as the man who returned to her house on four separate occasions and Rickey's cashing of Thorpe's check, we find this brief isolated remark by Thorpe to be inconsequential.

■ Moreover, the unsolicited response of Thorpe was isolated and fleeting. To have objected would only have highlighted her characterization. It would have been

reasonable trial strategy not to object. Nor do we understand how the failure to object could have prejudiced Rickey. The evidence of guilt was strong. This fleeting and apparently almost unsolicited and spontaneous characterization by the victim did not likely inflame the jury or deprive Rickey of his constitutional right to a fair trial.

Because Rickey fails to satisfy the two-prong test established in *Strickland,* his point on appeal is denied.

The decision of the motion court is affirmed.

THOMAS H. NEWTON, Presiding Judge, and JOSEPH M. ELLIS, Judge, concur.