

# In the Missouri Court of Appeals
## Eastern District

### DIVISION TWO

IN THE MATTER OF THE CARE AND
TREATMENT OF: A.K., a/k/a A.D.K.

)
)
)
)
)
)
)
)
)
)
)

No. ED111269

Appeal from the Circuit Court
of the City of St. Louis

Honorable Madeline O. Connolly

FILED: November 7, 2023

### Introduction

A.K. appeals from the trial court's judgment committing him to the Missouri Department of Mental Health ("DMH") following a jury verdict determining that A.K. was a sexually violent predator ("SVP"). A.K. raises three points on appeal. In Point One, A.K. argues that he received ineffective assistance of counsel because trial counsel failed to move for a mistrial after the State rested without calling one of its endorsed expert witnesses. In Point Two, A.K. alleges he received ineffective assistance because trial counsel failed to object when the Victim of the index offense testified about her employment and family. In Point Three, A.K. contends that the trial court abused its discretion when it precluded trial counsel from eliciting testimony about or arguing that A.K. would be committed to DMH if the jury found him to be an SVP. Because the State was under no obligation to call all of its endorsed witnesses, and because a request for a mistrial on that ground would not have been meritorious, we find that trial counsel was not

ineffective for failing to move for mistrial, and we deny Point One. Further, trial counsel exercised reasonable trial strategy by choosing not to object to Victim's testimony, which was too fleeting and isolated to be prejudicial, and we deny Point Two. As to the trial court's ruling regarding questions about A.K's commitment to DMH, we find the trial court acted within its discretion to limit the evidence and arguments to those issues properly before the jury, and we deny Point Three. Accordingly, we affirm the trial court's judgment.

<u>Factual and Procedural History</u>

A.K. has a history of sexual misconduct, including a conviction for forcible rape against Victim. Due to this history, in 2017, the State petitioned to have A.K. committed to DMH as an SVP. The matter first went to a jury trial in July 2021, which ended with a deadlocked jury and a mistrial. The State re-tried the case in July 2022.

Prior to trial, the State endorsed as expert witnesses Dr. H.G. and Dr. L.W., both psychologists who evaluated and diagnosed A.K. During its opening statement, the State explained, "While there have been many different diagnoses and labels that have been placed on [A.K.] over the years, all the *experts* in this case agree on at least two[:] [o]ne is antisocial personality disorder, and the second is schizophrenia." (Emphasis added). Trial counsel expected the State to call both experts, Dr. H.G. and Dr. L.W., to testify at trial. Specifically, trial counsel anticipated that Dr. H.G. would testify that he diagnosed A.K. with antisocial personality disorder and schizophrenia, and that Dr. L.W. would testify that she diagnosed A.K. with otherwise specified paraphilic disorder nonconsent ("OSPD-nonconsent") and schizophrenia.

One of trial counsel's strategies was to discredit Dr. L.W.'s diagnosis of OSPD-nonconsent, a disorder in which an individual is attracted to nonconsensual sex. During opening statement, trial counsel explained:

2

You're going to hear from Dr. [L.W.], the [DMH] psychologist, who says that [A.K] has something called [OSPD-nonconsent] and schizophrenia. But what you're going to hear her tell you from her own mouth, from that chair, is that [OSPD-nonconsent] is a contested diagnosis in the psychological field. It's not completely accepted.

During its case-in-chief, the State called Dr. H.G., who testified about the purpose of an SVP evaluation:

[T]he purpose is to see if the person meets criteria as a[n] [SVP]. . . . [I]f they do meet that criteria, then they could be committed in a court of law. If I find them not to meet criteria . . . they could be released. And then [ ] if they still have some parole or probation time, they go back on parole or probation. If not, they just get released.

The first day of trial ended, and the trial court held a jury instruction conference. The State submitted Instruction Number 8 ("Instruction No. 8"), which stated: "If you find that the respondent is a[n] [SVP], the respondent shall be committed to the custody of the director of [DMH] for control, care and treatment." The trial court accepted Instruction No. 8 with no objection from A.K.

Trial resumed the following day. On cross-examination, trial counsel asked Dr. H.G. if he was "testifying at the behest of the Attorney General's Office asking the Court to commit [A.K.] as a[n] [SVP]?" Dr. H.G. responded in the affirmative. The State objected and requested a sidebar, at which the State presented its objection:

| | |
|---|---|
| State: | So this is about the third time that I've heard it, and the first I'm bringing it to the Court[']s attention. Nobody is asking anybody to commit anybody here. |
| Trial Counsel: | That is in your [Instruction No. 8], commit him to the care, custody and control of the [DMH]. |

The trial court sustained the State's objection, noting that the issue of commitment to DMH had no bearing on the jury's decision. The trial court further explained that the jury's only task was

3

to decide whether A.K. met the definition of an SVP, which would then result in his commitment.

Dr. H.G. testified that he disagreed with Dr. L.W.'s OSPD-nonconsent diagnosis. Trial counsel also inquired about Dr. H.G.'s role as an expert witness in SVP trials. Trial counsel asked: "[W]hen you testify, it's about [ninety] percent of the time in favor of commitment, correct?" The State objected to the use of the word "commitment" on the same grounds as previously ruled on, and trial counsel agreed to rephrase the question. Trial counsel asked: "[A]bout [ninety] percent of the time you testify that a man should be committed, correct?" The State renewed its objection and sought a curative instruction. The trial court granted the request for a curative instruction and informed the jury to "disregard the question and the wording that was used." Trial counsel then asked without objection from the State: "About [ninety] percent of the time you testify that a man should be qualified as a[n] [SVP]?" Dr. H.G. answered yes.

The State then called Victim, against whom A.K. was found to have committed forcible rape in 1996, the index offense for his SVP proceedings.[1] Trial counsel initially objected to Victim's testimony as being cumulative and designed to inflame the jury. Trial counsel moved to strike Victim as a witness, and the trial court denied the motion. Victim then testified about the index offense, stating that A.K. attacked her while she walked into her home after work. Her testimony referenced her family and employment at the time of the index offense:

| State: | Where were you working back then? |
| Victim: | My mother owned a bar and restaurant, and I was bartending. |
| State: | And at that time your family consisted of you and who else? |
| Victim: | Myself, my husband, and we had a son who was three years old and a daughter who was barely six months. |
| State: | And what shift did you work? |
| Victim: | I was the night shift. We closed at 1:30 [a.m.] |

---

[1] The index offense is the underlying sexually violent offense for which the individual was prosecuted. Grado v. State, 559 S.W.3d 888, 893 n.3 (Mo. banc 2018); see also Section 632.480(4), RSMo (2016) (enumerating sexually violent offenses, including forcible rape).

4

State:      And so were you headed home that night?
Victim:     I was.

Victim testified that during A.K.'s attack, she "remember[ed] saying, please don't hurt me [and] . . . that [she] had young kids." Victim also stated that, because she was attacked just outside of her home, she "reach[ed] up [and] hit[] the window because [she] knew [her] husband was inside." Trial counsel did not cross-examine Victim.

The State rested its case without calling any additional witnesses. A.K. moved for a directed verdict at the close of the State's evidence, which the trial court denied.

In A.K.'s case-in-chief, trial counsel called Dr. B.H., a psychiatrist. Dr. B.H. testified that he disagreed with Dr. L.W.'s diagnosis of OSPD-nonconsent because the disorder "is a highly controversial and as of yet unsubstantiated concept in the field of mental health." Trial counsel did not call any additional witnesses, and A.K. rested.

When trial counsel began her closing argument, she stated:

Ladies and gentleman, what is this case about? Let's start with how this case came about. The Court orders an evaluation by [DMH]. That evaluation gets returned to the Court, addressed to the Court because the Court ordered it. That happened in this case. That evaluation came back and said [A.K.] should be committed.

The State objected in the following exchange:

State:          Objection, your Honor.
Trial Counsel:  Should be—that evaluation found that [A.K.] qualified to
                be committed.
State:          Your Honor—
Trial Counsel:  Judge, the [Instruction No. 8] says he'll be committed.

The trial court initiated a sidebar, during which the State argued that trial counsel repeatedly referred to commitment when the issue of commitment was "not the issue before the jury." Trial counsel countered that Instruction No. 8 brought the issue before the jury. The trial court instructed trial counsel that she could not "focus on the fact that if [the jury] find[s] [A.K.]

5

to be a[n] [SVP] that he will be committed." The trial court explained that while trial counsel could "certainly reference Instruction [No.] 8" and discuss the issue on rebuttal, trial counsel could not "argue that the jury is to decide whether or not [A.K. is] to be committed[; the issue] is to decide whether or not [A.K. is] a [SVP], which results in Instruction [No.] 8."

In its closing argument, the State argued without objection from A.K., "I really want to [] emphasize the words 'if not confined to a secure facility.' Members of the jury, you have a firsthand account of what [A.K.'s] behavior is like if not confined to a secure facility. And the witness that gave you that account, her name is [Victim]."

The jury unanimously found A.K. to be an SVP, and the trial court committed A.K. to DMH. This appeal follows.

## Points on Appeal

A.K. raises three points on appeal. Point One alleges trial counsel was ineffective for failing to request a mistrial when the State rested without calling Dr. L.W. A.K. argues he was prejudiced because trial counsel's defense strategy focused on discrediting Dr. L.W.'s anticipated testimony about the OSPD-nonconsent diagnosis, and the prejudice could only be corrected by declaring a mistrial. In Point Two, A.K. alleges that trial counsel was ineffective for failing to object to Victim's testimony about her employment and family because it was irrelevant and inflammatory. Point Three contends that the trial court abused its discretion when it precluded trial counsel from eliciting testimony about and arguing that A.K. would be committed to DMH if the jury found him to be an SVP because the term commit was used in Instruction No. 8 and was central to the jury's determination.

## Discussion

### I.    Points One and Two—Ineffective Assistance of Counsel

6

A.K. first raises two points on appeal challenging trial counsel's effectiveness at trial. In both points, A.K. asks us to reverse the judgment or, in the alternative, remand the case for an evidentiary hearing.

A.     Standard of Review

Under Missouri's Sexually Violent Predator Act ("SVPA"), the State may commit a person to the custody of DMH as an SVP when it establishes by clear and convincing evidence that the person: "(1) has committed a sexually violent offense; (2) suffers from a mental abnormality; and (3) this mental abnormality 'makes the person more likely than not to engage in predatory acts of violence if not confined in a secure facility.'" Kirk v. State, 520 S.W.3d 443, 448–49 (Mo. banc 2017) (quoting Section 632.480(5)).[2] Because commitment to DMH impairs a protected liberty interest, respondents in SVP proceedings have a due process right to effective assistance of counsel, which vests when the State files its petition. Grado v. State, 559 S.W.3d 888, 895–96 (Mo. banc 2018); White v. State, 576 S.W.3d 285, 296 (Mo. App. W.D. 2019) (citing Bernat v. State, 194 S.W.3d 863, 868 (Mo. banc 2006)).

Unlike criminal cases, claims of ineffective assistance of counsel in SVP proceedings may be raised on direct appeal. Grado, 559 S.W.3d at 897. Although the standard of review for ineffective assistance claims in criminal cases is clear, the standard to be applied in appeals from SVP proceedings is uncertain; the Supreme Court of Missouri has yet to identify which standard applies, and it has reviewed recent appeals from SVP proceedings *applying both* the meaningful-hearing standard—adopted from termination of parental rights cases—and the standard set forth in Strickland v. Washington, 466 U.S. 668 (1984), for post-conviction relief proceedings. See id. at 892 (noting there is no established standard of review for ineffective assistance of counsel

---

[2] All Section references are to RSMo (2016), unless otherwise noted.

7

claims in SVP proceedings and analyzing the claim under both standards); see also Matter of D.N., 598 S.W.3d 108, 121 (Mo. banc 2020) (same).

Under the meaningful hearing standard, a reviewing court inquires whether the respondent had a "meaningful opportunity to participate and be heard in the entire judicial process." D.N., 598 S.W.3d at 122. When applying this standard of review, we consider the proceeding in its *entirety* rather than evaluating "on a step-by-step basis." Id. Meaningful hearing is a "minimal standard." Grado, 559 S.W.3d at 903 (Draper, J., concurring). This Court has found failure to provide a meaningful hearing when counsel "did little to advocate" for their client "beyond appear for the hearing." In Int. of J.M.B., 939 S.W.2d 53, 56–57 (Mo. App. E.D. 1997).

To obtain relief for ineffective assistance of counsel under the Strickland standard, the movant must demonstrate that (1) counsel's actions "fell below an objective standard of reasonableness" (the performance prong), and (2) "but for counsel's errors, the result of the proceeding would have been different" (the prejudice prong). Ervin v. State, 80 S.W.3d 817, 822 (Mo. banc 2002) (citing Strickland, 466 U.S. at 688, 694). The movant must satisfy both prongs; if the claim fails under either, then we need not consider the other. McGuire v. State, 523 S.W.3d 556, 563 (Mo. App. E.D. 2017).

As to the performance prong, "[j]udicial scrutiny of counsel's performance must be highly deferential." Strickland, 466 U.S. at 689. To wit, "[i]n order to overcome the strong presumption that counsel's conduct was reasonable and effective, [the movant] would have to identify specific acts or omissions of counsel that, in light of all the circumstances, fell outside the wide range of professional competent assistance." Grado, 559 S.W.3d at 898 (quotations and citations omitted). Reasonable, strategic trial decisions generally cannot form the basis for a

8

claim of ineffective assistance—even where the benefits of hindsight allow the movant to identify a preferred alternate strategy. Hawkins v. State, 512 S.W.3d 112, 116 (Mo. App. E.D. 2017).

As to the prejudice prong, "the question is whether 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" D.N., 598 S.W.3d at 121 (quoting Strickland, 466 U.S. at 694). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Deck v. State, 68 S.W.3d 418, 526 (Mo. banc 2002) (quoting Strickland, 466 U.S. at 694).

To date the Supreme Court has not proscribed a particular standard for reviewing claims of ineffective assistance of counsel at SVP proceedings. Accordingly, the Supreme Court and appellate courts have reviewed such claims under both the meaningful hearing and Strickland standard. See Grado, 559 S.W.3d at 892; D.N., 598 S.W.3d at 121–23; see also Haggerman v. State, 637 S.W.3d 697, 701 (Mo. App. W.D. 2021). Absent further guidance from the Supreme Court, we will do the same here.

A.K. requests either reversal of the judgment or remand for an evidentiary hearing. "[I]n the post-conviction context, Missouri courts hold that an evidentiary hearing need not be granted unless the movant '(1) allege[s] facts, not conclusions, warranting relief; (2) raise[s] factual matters that are not refuted by the file and record; and (3) raise[s] allegations that resulted in prejudice.'" Haggerman, 637 S.W.3d at 701 (quoting Johnson v. State, 406 S.W.3d 892, 898 (Mo. banc 2013)). Where the record is sufficient to determine the merits of the claim, we need not remand for an evidentiary hearing. Id.

B.    Point One: Failure to Move for Mistrial

A.K. alleges that trial counsel was ineffective for failing to move for a mistrial after the State rested without calling Dr. L.W., one of its endorsed witnesses.

9

### 1.  Meaningful Hearing Standard—Failure to Request a Mistrial

Counsel provides a meaningful SVP hearing where the respondent "received a full and fair trial, wherein the State presented the evidence supporting its petition for civil commitment, and [the respondent's] counsel cross-examined the State's witnesses and presented evidence on [the respondent's] behalf[.]" Id. at 701–02; see also D.N., 598 S.W.3d at 122 (finding counsel provided a meaningful SVP hearing where the respondent had an "opportunity to cross-examine witnesses, present his own evidence, and testify in his own defense").

The basis of A.K.'s first ineffective assistance claim is that trial counsel's strategy turned on discrediting Dr. L.W.'s *anticipated* testimony about diagnosing A.K. with OSPD-nonconsent. For that reason, trial counsel invoked the diagnosis multiple times during the trial—including in her opening statement, while cross-examining Dr. H.G., and while examining Dr. B.H.  A.K. reasons that trial counsel should have requested a mistrial once the State rested without calling Dr. L.W.  A.K. concludes that trial counsel's failure to do so meant that trial counsel was "tricked" into defending against a diagnosis that the State ultimately did not introduce into evidence, which likely confused and misled the jury, thereby depriving A.K. of a meaningful hearing.

Looking at the record at its entirety, as we must, we conclude that trial counsel provided A.K. with a meaningful hearing. See D.N., 598 S.W.3d at 122.  A.K. received a full trial, at which both the State and trial counsel presented evidence, trial counsel cross-examined one of the State's witnesses, and trial counsel called an expert witness to testify about A.K.'s diagnoses. See Haggerman, 637 S.W.3d at 701–02.  Trial counsel advocated throughout the proceedings, as evidenced by her preparation of jury instructions and motions in limine, her moving for a directed verdict at the close of the State's evidence, and her motion for a new trial. See D.N., 598 S.W.3d at 122.  We are not persuaded that the State's decision not to call Dr. L.W. impacted

10

A.K.'s opportunity to fully participate and be heard in the juridical process. See id.

Accordingly, we find trial counsel was effective under the meaningful hearing standard.

### 2. Strickland Standard—Failure to Request a Mistrial

"Mistrial is a drastic remedy only to be exercised in extraordinary circumstances where there is no other way to remove the prejudice to the defendant." Bracken v. State, 453 S.W.3d 866, 873 (Mo. App. E.D. 2015) (internal quotation omitted). Under the Strickland standard, "[c]ounsel will not be deemed ineffective for failing to request a mistrial that would not have been granted." Id. Accordingly, failure to make a *non-meritorious* request for a mistrial cannot lay the foundation for an ineffective assistance of counsel claim. See id.; accord Zink v. State, 278 S.W.3d 170, 188 (Mo. banc 2009) ("[T]rial counsel is not ineffective for failing to make non-meritorious objections.") (internal quotation omitted); McFadden v. State, 553 S.W.3d 289, 317 (Mo. banc 2018) (noting that the failure to make "meritless objections" cannot support a Strickland claim). To satisfy Strickland's performance prong on the basis that counsel was ineffective for failing to request a mistrial, the movant carries the burden of demonstrating that, if requested, the mistrial would have been granted. Bracken, 453 S.W.3d at 873.

A.K. alleges that trial counsel should have moved for a mistrial on the grounds that the state failed to call Dr. L.W., an endorsed witness. In making this argument, A.K. overlooks long-established precedent that the "[S]tate is not obligated to call every witness it has endorsed." State v. Cole, 821 S.W.2d 129, 131 (Mo. App. E.D. 1992); State v. Cameron, 604 S.W.2d 653, 659 (Mo. App. E.D. 1980) (citing State v. Jones, 456 S.W.2d 7, 8 (Mo. 1970)); accord State v. Harris, 535 S.W.3d 769, 778 n.4 (Mo. App. E.D. 2017) (noting there is "no disadvantage" when the State "over-endors[es]" witnesses who ultimately are not called).

We first note that the record shows that the State endorsed two expert witnesses, Dr. H.G. and Dr. L.W., both of whom would testify regarding A.K. meeting the requirements of an SVP

11

under Missouri law. Trial counsel engaged in a vigorous cross-examination of Dr. H.G., emphasizing that Dr. H.G.'s testimony was almost 90% favorable to the State in finding that the subject of examination qualified as an SVP. As the State was not obligated to call Dr. L.W. to testify, we find that A.K. did not meet his burden of establishing that trial counsel's motion for a mistrial would have been granted if requested. See Bracken, 453 S.W.3d at 873; see also Southern v. State, 572 S.W.3d 104, 110 (Mo. App. S.D. 2019) (denying a claim for ineffective assistance of counsel for failure to request a mistrial where the appellant's argument was devoid of explanation as to why the request for a mistrial would have been granted). We thus cannot say trial counsel was ineffective for failing to request a mistrial. See Bracken, 453 S.W.3d 873; see also Zink, 278 S.W.3d at 188 (internal quotation omitted).

Mistrial is an appropriate remedy only where "there is no other way to remove the prejudice" to the movant and "there is a reasonable probability that [the movant] was deprived of a fair trial." Bracken, 453 S.W.3d at 873. A.K. appears to argue that the State's failure to call Dr. L.W. satisfies the extraordinary grounds requisite for mistrial because it was an attempt to "trick" trial counsel into defending against the "wrong allegations." We remind A.K. that Dr. L.W. was not the only expert witness endorsed by the State. Moreover, A.K.'s characterization of the State's intentions in not calling Dr. L.W. is purely speculative and without any foundational support in the record. Although we recognize the importance of avoiding unfair surprise at trial, we are not convinced that the State's decision not to call Dr. L.W. undermined trial counsel's ability to advocate for A.K. or deprived him of a fair trial. See id. We thus do not agree that A.K. incurred the extraordinary circumstances that would have justified declaring a mistrial. See id.

12

Because A.K.'s claim fails on the performance prong, we need not reach the prejudice prong. See McGuire, 523 S.W.3d at 563. Further, because the record was sufficient for us to review and deny A.K.'s claim on the merits, A.K. is not entitled to an evidentiary hearing. See Haggerman, 637 S.W.3d at 701. Point One is denied.

C.     Point Two: Failure to Object to Victim's Testimony

A.K. next challenges trial counsel's effectiveness for not objecting to Victim's testimony about her family and employment at the time of the 1996 index offense. Victim testified that A.K. attacked her as she returned home from working at her family's bar and restaurant. Victim explained that she was attacked on the sidewalk just outside her home, and, because she knew her husband was inside at the time, she attempted to reach up and hit a window during the attack. Victim remembered imploring A.K. not to hurt her and telling him that she had young children. A.K. contends that trial counsel's failure to object to Victim's testimony constituted ineffective assistance of counsel.

### 1.     Meaningful Hearing Standard—Failure to Object

A.K. maintains that trial counsel's failure to object during Victim's testimony about her employment and family deprived A.K. of a meaningful SVP hearing because the emotional nature of the testimony made Victim more sympathetic and clouded the true question for the jury's determination.

Upon reviewing the full record, we find no evidence that trial counsel's decision not to object to or engage with the Victim's brief and limited testimony about her family and work deprived A.K. of a meaningful hearing. See D.N., 598 S.W.3d at 122 (internal quotation omitted) (noting we must examine the record in its entirety). Trial counsel's advocacy throughout the *entirety* of the proceedings informs whether the hearing was meaningful. Compare Haggerman, 637 S.W.3d 697, 701–02 (Mo. App. W.D. 2021) (finding a hearing

13

meaningful where the trial was "full and fair," and counsel cross-examined the state's witnesses and presented evidence on the respondent's behalf) with J.M.B., 939 S.W.2d at 56–57 (concluding the respondent was deprived of a meaningful hearing where counsel "did little to advocate" for their client "beyond appear[ing] for the hearing"). Here, as noted above, A.K. received a full trial, at which the State adduced evidence supporting its petition to declare A.K. an SVP, and trial counsel cross-examined a key expert witness for the State and presented evidence on A.K.'s behalf. See Haggerman, 637 S.W.3d at 701–02. Trial counsel also submitted jury instructions, argued motions in limine, moved for a directed verdict, and motioned for a new trial. See id. In light of the entire record, we do not agree that trial counsel's decision to refrain from objecting to a single line of questioning deprived A.K. of a meaningful hearing. See D.N., 598 S.W.3d at 122 (internal quotation omitted).

## 2.     Strickland Standard—Failure to Object

A.K. next argues that, under Strickland, effective trial counsel would have objected to Victim's testimony about her family and employment because those statements were irrelevant and inflammatory. A.K. reasons that, but for this testimony, there is a reasonable probability that he would not have been found to be an SVP.[3]

A trial counsel's failure to object to testimony is rarely grounds for an ineffective assistance claim because "*whether* or *when* to make objections" is a matter of trial strategy.

---

[3] We note that A.K. appears to present this point in three related but distinct ways: (1) trial counsel was ineffective for failing to object during Victim's testimony *in front of the jury*; (2) trial counsel was ineffective for failing to object *outside the presence of the jury*; and (3) although trial counsel originally objected to Victim testifying altogether, she was ineffective for failing to *narrow her objection* to testimony about family and employment. A single point on appeal may present only one cognizable claim for review. Griffitts v. Old Republic Ins. Co., 550 S.W.3d 474, 478 n.6 (Mo. banc 2018) ("Multifarious points relied on are noncompliant with Rule 84.04(d) and preserve nothing for review.") (quotation omitted). However, we will exercise our discretion to consider the merits of A.K.'s claims and—to the extent that these three frameworks present our court with different issues—we find that they are resolved in the following discussion. See Int. of D.D.B., 660 S.W.3d 65, 74 n.5 (Mo. App. E.D. 2023) ("[W]e have discretion to exercise review of multifarious points on appeal when the argument is readily ascertainable and does not require us to become an advocate for one party.") (quotation omitted).

Bracken, 453 S.W.3d at 871 (emphasis added) (internal quotation omitted). Prevailing on a claim that trial counsel performed unreasonably by failing to object requires overcoming the "virtually unchallengeable" presumption that trial counsel's strategy was reasonable. Zink, 278 S.W.3d at 176 (quoting Strickland, 466 U.S. at 690). Missouri courts have repeatedly recognized that a decision not to object may be reasonable trial strategy when objecting could emphasize negative witness testimony. Bracken, 453 S.W.3d at 871 (quoting State v. Tokar, 918 S.W.2d 753, 768 (Mo. banc 1996)) (failing to object was reasonable trial strategy where the objection would have "highlight[ed]" adverse testimony, thereby "resulting in more harm than good"); see also Rickey v. State, 52 S.W.3d 591, 596–97 (Mo. App. W.D. 2001) ("To have objected would only have highlighted [the witnesses' negative] characterization[;] [i]t would have been reasonable trial strategy not to object."); accord Harding v. State, 613 S.W.3d 522, 530–31 (Mo. App. E.D. 2020) (holding it was a reasonable strategy for trial counsel to limit cross-examination of a "traumatized young girl" when a more thorough examination "risked alienating the jury and harming [the] defense"). Counsel's failure to object "will only be deemed ineffective when the defendant has suffered a substantial deprivation of his right to a fair trial" as a result. Davis v. State, 653 S.W.3d 169, 174 (Mo. App. S.D. 2022) (quoting Worthington v. State, 166 S.W.3d 566, 581 (Mo. banc 2005)).

Here, trial counsel initially objected to Victim offering any testimony about the index offense. When the trial court permitted Victim to testify over that initial objection, trial counsel refrained from raising specific objections to Victim's testimony, including her limited statements about her employment and family, and trial counsel further elected not to cross-examine her. We need not look far in rejecting A.K.'s claim that trial counsel's failure to object to Victim's testimony was not reasonable strategy. Indeed, A.K.'s own statements set forth in his brief

15

summarize trial counsel's strategy, which we find to be extremely reasonable. As A.K. explained:

> [If granted an evidentiary hearing, A.K.] anticipates that trial counsel would testify that her strategy was to get [Victim] off the witness stand as fast as possible so that the other witnesses would have primacy and recency in the jurors' minds. [Trial counsel] considered [Victim] to be highly damaging to [A.K.'s] case due to the emotional nature of her testimony. Accordingly, [trial counsel] strategically decided not to object to [Victim's] testimony in front of the jury, but [trial counsel] would have objected to the anticipated statements outside the presence of the jury had it occurred to her.

A.K.'s argument reflects what this Court has already noted: trial counsel's strategy was to neither prolong nor emphasize Victim's adverse testimony, and therefore it was reasonable to decide not to object. See Bracken, 453 S.W.3d at 871; Rickey, 52 S.W.2d at 596–97. Whether or not other counsel may have strategized differently when addressing Victim's testimony does not suggest that trial counsel's approach was unreasonable. Barnett v. State, 103 S.W.3d 765, 772 (Mo. banc 2003) ("Although another attorney may well have employed a different strategy, tactical and strategic decisions—which might have been handled differently by many or even most attorneys—will not establish ineffectiveness."). In light of the "strong presumption" that counsel's conduct was reasonable and effective, we do not find this claim satisfies Strickland's performance prong. See Grado, 559 S.W.3d at 898.

Further, even assuming *arguendo* that trial counsel's failure to object was error, A.K. has not demonstrated prejudice from Victim's testimony. To prevail on Strickland's prejudice prong requires a finding that, but for counsel's errors, the result of the proceeding would have been different. Id. A.K. must do more than show that trial counsel's failure to object to Victim's testimony "'had some conceivable effect on the outcome of the proceeding' or that the errors 'impaired the presentation of the defense,' as those standards are either unworkable or subject to being satisfied by every error." White, 576 S.W.3d at 299 (quoting Strickland, 466 U.S. at 693).

16

The record shows that over the course of A.K.'s three-day trial, Victim's comments about her employment and family were fleeting and isolated. We are not persuaded that this limited testimony supports a finding of outcome-determinative prejudice. See Rickey, 52 S.W.3d at 596–97 (Mo. App. W.D. 2001); see also Hays v. State, 484 S.W.3d 121, 133 (Mo. App. W.D. 2015) (noting that counsel's failure to object to a "fleeting comment" was not prejudicial); Meuir v. State, 182 S.W.3d 788, 792 (Mo. App. S.D. 2006) (finding that counsel's failure to strike an "isolated comment" from the record was not prejudicial).[4]

Because the record conclusively demonstrates that A.K.'s claim does not warrant relief, A.K. is entitled to neither a reversal nor an evidentiary hearing. See Haggerman, 637 S.W.3d at 701. Point Two is denied.

## II.     Point Three—Abuse of Discretion

In the final point on appeal, both A.K. and the State agree that the trial court precluded trial counsel from "using the word 'commit'" during the trial. A.K. posits that the trial court abused its discretion by prohibiting trial counsel from inquiring or commenting on the "commitment" language specifically referenced in Instruction No. 8. In contrast, the State reasons that the trial court's ruling minimized the risk of confusing the jury by limiting testimony and argument to the issue of A.K.'s status as an SVP.

### A.     Standard of Review

---

[4] A.K. appears to argue that prejudice is demonstrated by the fact that, during deliberations, the jury sent a question to the trial court requesting the trial transcript from the 1996 index offense. The jury explained that it wanted the transcript to "understand the mindset of [A.K.] when he committed the rape." The trial court declined the request and instructed the jury it "must be guided by the evidence as [the jury] remember[ed] it, by the reasonable inferences derived from the evidence[,] and guided by the Court's written instructions as given." The simple fact that a jury asked a question will not disturb our presumption that it follows the court's instructions. State v. Cummings, 514 S.W.3d 110, 114 (Mo. App. W.D. 2017) (citing State v. Shurn, 866 S.W.2d 447, 465 (Mo. banc 1993)). We do not agree that the jury's unfulfilled request is enough to undermine our confidence in the judgment, as Strickland's prejudice prong requires.

17

"A trial court has considerable discretion in determining whether evidence should be admitted or excluded." Lewis v. State, 152 S.W.3d 325, 330 (Mo. App. W.D. 2004) (quotation omitted). Therefore, we review a trial court's decision to allow evidence at trial for abuse of discretion. Tyson v. State, 249 S.W.3d 849, 852 (Mo. banc 2008). We will only reverse the trial court's exclusion of evidence where the ruling was "against the logic of the circumstances and so arbitrary or unreasonable as to shock the sense of justice and indicate a lack of careful consideration." Id. "If reasonable minds could differ about the propriety of the ruling, no abuse of discretion has occurred." State v. Tillitt, 552 S.W.3d 571, 580 (Mo. App. W.D. 2018) (quotation omitted). We will only reverse an error constituting an abuse of discretion where it was prejudicial, in that it had a "material effect on the merits of the action." Lewis, 152 S.W.3d at 330.

B.      Analysis

As a preliminary matter, we find that both parties misrepresent the scope of the trial court's sidebar ruling during the trial. The record on appeal reveals that the trial court did not broadly preclude trial counsel from using the word "commit," which—given that this was a commitment hearing—may have presented this Court with a different issue. Rather, the trial court precluded counsel from eliciting testimony suggesting or arguing *that the issue before the jury* was whether to commit A.K. to DMH. We proceed in our analysis accordingly.

Under the SVPA, the issue before the factfinder at an SVP proceeding is "determin[ing] whether, by clear and convincing evidence, the person is a[n] [SVP]." Section 632.495; see Lewis, 152 S.W.3d at 331. The SVPA further defines an SVP as any person who (1) "suffers from a mental abnormality which makes the person more likely than not to engage in predatory acts of sexual violence if not confined in a secured facility" and (2) has been convicted of an index offense. Section 632.480(5)(a)–(b); Grado, 559 S.W.3d at 893. Therefore, the issue

18

before this jury was determining whether, by clear and convincing evidence, it believed A.K. suffered from a mental abnormality that made him more likely than not to engage in a predatory act of sexual violence if not confined and that he had been convicted on an index offense. See Holmes v. Steelman, 624 S.W.3d 144, 149 (Mo. banc. 2021) (noting that rules of statutory construction require consistent parts of a statute to be read together and harmonized). The SVPA neither directs the jury to determine whether commitment to DMH is appropriate nor tasks the jury with any other determination about the course of treatment for an SVP. See Section 632.495.

The SVPA mandates that when an SVP trial "is held before a jury, the judge shall instruct the jury that if it finds that the person is a[n] [SVP], the person shall be committed to the custody of the director of [DMH] for control, care and treatment." Section 632.492; Kirk, 520 S.W.3d at 457. Here, Instruction No. 8 satisfied that statutory mandate. See Kirk, 520 S.W.3d at 457.

A "trial court has discretion to exclude evidence that presents a high risk of misleading or confusing the jury, even if the opposing party has opened the door to such evidence." Id. at 456. A trial court may also exclude evidence that creates an "unacceptable risk" of distracting the jury from the issue before it. Id. at 455. We are not the first court to determine whether a trial court abused its discretion by excluding evidence that presented an issue different than the one before a jury in an SVP proceeding. In Kirk, a respondent sought to present evidence about a release plan he would follow should the jury find he was not an SVP. Kirk, 520 S.W.3d at 454. The trial court excluded the evidence. Id. On appeal, the Supreme Court found that trial court's ruling was not an abuse of discretion because evidence regarding a release plan *risked shifting the focus away from the ultimate issue before the jury*: determining whether the respondent was an SVP. Id. at 455–56.

19

Here, as in Kirk, the record reflects that the trial court excluded language that risked distracting the jury with a different issue or altogether confusing the jury about its role as factfinder. See id. The trial court's rulings occurred first during trial counsel's cross-examination of Dr. H.G. and second during trial counsel's closing argument.

When cross-examining Dr. H.G., trial counsel inquired multiple times as to his prior experience offering expert witness testimony at SVP proceedings. Trial counsel initially inquired whether he was "testifying at the behest of the Attorney General's Office *asking the Court to commit* [A.K.] as a[n] [SVP] . . . ?" (Emphasis added). The State called for a sidebar and objected on the basis that the question exceeded the scope of the issue before the jury, which was solely whether A.K. met the criteria of being an SVP. The State acknowledged that, consistent with Section 632.492, Instruction No. 8 explains what would happen should the jury find A.K. to be an SVP. However, the State maintained that the *consequences* of the verdict were not for the jury to decide and would only confuse the issue. The trial court sustained the objection. The issue recurred twice more, first when trial counsel asked if Dr. H.G. testified "[ninety] percent of the time in favor of commitment[?]" and second when trial counsel asked him whether "about [ninety] percent of the time [he] testif[ies] that a man should be committed, correct?" The State objected to both instances. The first time, the trial court allowed trial counsel to rephrase the question. The second, the trial court gave a curative instruction as requested by the State.

We find that the record shows the trial court acted within its discretion by ruling to exclude evidence concerning an issue that was not before the jury. See id. at 455–56. The trial court correctly determined that the jury's role was limited to determining whether A.K. met the statutory definition of an SVP under Section 632.495; it was not to decide whether to commit

20

A.K. See Lewis, 152 S.W.3d at 332. The effect of the trial court's ruling was to limit testimony to the issue actually before the jury. We are persuaded that the trial court excluded evidence in order to minimize confusion and reduce risk of the jury shifting its focus away from the ultimate issue. See Kirk, 520 S.W.3d at 455–56. We cannot say that this decision was "so arbitrary or unreasonable" as to constitute an abuse of discretion. See Tyson, 249 S.W.3d at 851.

Nor do we find error in the trial court's related ruling during closing argument.[5] Trial counsel introduced her closing argument by stating that a court-ordered evaluation of A.K. found that he should be committed. The State objected, and at a sidebar the trial court reiterated that trial counsel could reference Instruction No. 8 but could not argue to the jurors that it was their role to decide whether to commit A.K. The trial court emphasized that the only issue before the jury was whether A.K. met the requirement of being found an SVP under Missouri law. Again, we find the trial court acted within its discretion to prevent the jury from hearing an argument about a question that plainly was not before it. See Lewis, 152 S.W.3d at 332; see also Dent v. State, 662 S.W.3d 792, 798 (Mo. App. E.D. 2023) (noting that the parties are "granted wide latitude in closing arguments, provided [that] closing argument does not go beyond the evidence presented at trial"). We note that trial counsel was expressly encouraged by the trial court to reference Instruction No. 8 in closing argument, so long as trial counsel properly contextualized it as the *consequence* of the question before the jury *and not the question itself.* This ruling upholds the long-standing proposition that counsel are "encourage[d]" to "discuss[] the law as set forth in the court's instructions . . . as long as the discussion states the law fairly and

---

[5] Again, we note that A.K. appears to frame this single point on appeal in two distinct ways: (1) the trial court erred in its ruling pertaining to *cross-examination* of Dr. H.G. and (2) the trial court erred in its ruling pertaining to the scope of *closing argument*. Multifarious points on appeal are impermissible. Griffitts, 550 S.W.3d at 478 n.6. However, as with Point Two, we exercise our discretion to consider the merits of A.K.'s claim. See D.D.B., 660 S.W.3d at 74 n.5.

accurately." Rice v. Bol, 116 S.W.3d 599, 612 (Mo App. W.D. 2003) (citing State v. Jordan, 646 S.W.2d 747, 751 (Mo. banc 1983)). To allow trial counsel to suggest that the role of the jury was to commit A.K. would have been a misstatement of the law, and the trial court did not abuse its discretion in prohibiting trial counsel from doing so.[6] See Section 632.495; Lewis, 152 S.W.3d at 332. Finding no abuse of discretion, we deny Point Three.

Conclusion

The judgment of the trial court is affirmed.

_KURT S. ODENWALD, Presiding Judge_

Michael E. Gardner, J., concurs.
Renée D. Hardin-Tammons, J., concurs.

---

[6] A.K. also argues the trial court erred by not equally applying its ruling to the State, in that the State was allowed to discuss the content of Instruction No. 8, including the issue of commitment, multiple times during trial. In support of this claim, A.K. notes that, during closing argument, the State specifically stated it wanted to "emphasize the words 'if not confined to a secure facility'" from Section 632.480 and that the jury was presented "a firsthand account of what [A.K.'s] behavior is like if not confined to a secure facility." However, A.K.'s brief fails to recognize that trial counsel never objected to the State's arguments involving confining or committing A.K. Absent exceptional circumstances, we do not expect the trial court to raise sua sponte an objection on a party's behalf. State v. Drewel, 835 S.W.2d 494, 498 (Mo. App. E.D. 1992) ("We do not expect trial judges to assist counsel in the trial of a lawsuit. . . . Sua sponte action should be exercised only in exceptional circumstances."). Had trial counsel objected, the trial court would have been given the opportunity to respond with a consistent ruling. Given that the onus is on the complaining party to object, we decline to find A.K. has demonstrated the sort of extraordinary circumstance rising to an abuse of trial court's considerable discretion. See id.